

FILED

Nov 23 2015, 8:22 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Amy Karozos
Greenwood, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Robert J. Henke
James D. Boyer
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of the Termination of the Parent-Child Relationship of J.E. (Minor Child), <br><br> and <br><br> K.E. (Father), <br> *Appellant-Respondent,* <br><br> v. <br><br> The Indiana Department of Child Services, <br> *Appellee-Petitioner* | November 23, 2015 <br><br> Court of Appeals Case No. 49A05-1505-JT-437 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable Marilyn A. Moores, Judge <br><br> The Honorable Larry E. Bradley, Magistrate <br><br> Trial Court Cause No. 49D09-1410-JT-419 |

**Crone, Judge.**

# Case Summary

[1] K.E. ("Father") appeals a trial court order terminating his parental relationship with his one-year-old son J.E. He challenges only the trial court's denial of his motion for continuance and motion for order to transport.[1] Finding that the trial court acted within its discretion in denying Father's motions, we affirm.

# Facts and Procedural History

[2] In October 2013, Father was charged with class D felony synthetic identity deception in Hamilton County and released on recognizance. In December 2013, his girlfriend J.B. ("Mother") gave birth to his son J.E. Due to housing issues and Mother's past involvement with the Department of Child Services ("DCS"), J.E. was removed from Mother and Father at two days old and placed in foster care. Father visited J.E. once shortly after his removal.

[3] Later that same month, Father failed to appear at a pretrial hearing in his identity deception proceedings and was jailed pending trial. In March 2014, he pled guilty and was sentenced to 1095 days, with 915 of those suspended to

---

[1] In a footnote, Father states that he does not challenge the trial court's findings or conclusions concerning best interests of the child or satisfactory plan for the care and treatment of the child. Appellant's Br. at 12 n.9. To the extent that this statement implies an intent to challenge the trial court's findings or conclusions on the remaining elements found in Indiana Code Section 31-35-2-4(b)(2), we note that Father has not developed any cogent argument as to them. As such, he has waived appellate review of the trial court's findings and conclusions on these elements. Ind. Appellate Rule 46(A)(8); *see also A.D.S. v. Ind. Dep't of Child Servs.*, 987 N.E.2d 1150, 1156 n.4 (Ind. Ct. App. 2013) (finding that mother who failed to raise specific arguments regarding trial court's findings on certain statutory elements waived review of those findings), *trans. denied*.

probation. He attended a March 17, 2014 CHINS hearing in Marion County, where the trial court designated J.E. a CHINS and ordered Father to participate in home-based counseling, a father engagement program, and supervised visitation.[2] Father visited J.E. once shortly after the CHINS hearing and did not visit again.

[4] In July 2014, the Hamilton County court revoked Father's probation for failure to report and remanded him to the Department of Correction ("DOC"). Father did not complete any of his ordered services during the time he was out of jail or while he was incarcerated.

[5] During a permanency hearing in September 2014, DCS requested that the permanency plan be changed to termination and adoption. In October 2014, DCS filed a petition for termination of parental rights, and the trial court set the matter for initial hearing. Due to some problems with service of process on Father, the trial court granted several continuances. In January 2015, Father was served and signed an advisement requesting the appointment of counsel.

[6] Father was not present at a February 2015 pretrial hearing due to incarceration, but counsel was present and filed a motion for continuance, requesting that the termination factfinding hearing be reset for a date after his projected release in

---

[2] The trial court eventually also terminated Mother's parental rights to J.E., but she is not participating in this appeal. Thus, we limit our discussion to issues concerning Father.

July 2015.  DCS objected, and the trial court denied the motion and set the hearing for March 16, 2015.

[7] As an alternative to a continuance, on February 23, 2015, Father requested an order to transport him from the correctional facility in Edinburgh to the termination factfinding hearing in Indianapolis.  The trial court denied his motion and ordered that he participate by video conference or telephone.  When it was discovered that the correctional facility lacked the equipment for a video feed, Father renewed his motion for order to transport.  The trial court denied the motion and ordered that Father participate telephonically.  When the termination factfinding hearing was continued to April 29, 2015 due to scheduling conflicts, Father again requested a continuance until after his projected July 2015 release date, which the trial court denied.  At the final hearing on April 29, 2015, Father was present by counsel and by telephone.  Counsel again renewed the request for a transport order, which was denied.

[8] On May 8, 2015, the trial court issued an order with findings of fact and conclusions thereon terminating Father's parental relationship with J.E.  Father now appeals.  Additional facts will be provided as necessary.

## Discussion and Decision

## Section 1 – The trial court acted within its discretion in denying Father's motion for continuance.

[9] Father challenges the trial court's denial of his motion to continue the termination factfinding hearing until after his release from incarceration.  The

decision to grant or deny a motion for continuance is within the sound discretion of the trial court. *J.P. v. G.M.*, 14 N.E.3d 786, 789 (Ind. Ct. App. 2014). We will reverse only for an abuse of that discretion. *Rowlett v. Vanderburgh Cnty. Office of Family & Children*, 841 N.E.2d 615, 619 (Ind. Ct. App. 2006), *trans. denied*. An abuse of discretion occurs where the trial court reaches a conclusion that is clearly against the logic and effect of the facts or the reasonable and probable deductions that may be drawn therefrom. *J.P.*, 14 N.E.3d at 790. Where the trial court denies a motion for continuance, an abuse of discretion will be found if the moving party has demonstrated good cause for granting the motion. *Rowlett*, 841 N.E.2d at 619; *see also* Ind. Trial Rule 53.5 (stating that trial court has discretion to grant continuance on motion and continuance "shall be allowed upon a showing of good cause established by affidavit or other evidence."). No abuse of discretion will be found where the moving party has not shown that he was prejudiced by the denial of his continuance motion. *J.P.*, 14 N.E.3d at 790.

[10] Father characterizes the denial of his motion for continuance as a denial of his due process rights. When the State seeks to terminate parental rights, it must do so in a fundamentally fair manner that meets due process requirements. *In re C.G.*, 954 N.E.2d 910, 917 (Ind. 2011). Due process affords parents the opportunity to be heard at a meaningful time and in a meaningful manner. *Id.* This does not mean that parents have an absolute right to be *physically* present at the termination hearing. *In re K.W.*, 12 N.E.3d 241, 248-49 (Ind. 2014). The United States Supreme Court addressed the due process requirement in

connection with requests for continuance in *Ungar v. Sarafite*, 376 U.S. 575, 589-90 (1964), reasoning,

> The matter of continuance is traditionally within the discretion of the trial judge, and it is not every denial of a request for more time that violates due process even if the party fails to offer evidence or is compelled to defend without counsel. Contrawise, a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality. There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request was denied.

*Ungar* specifically addressed a request for continuance to engage counsel. *Id*.

[11] Here, counsel attended the termination factfinding hearing in person on Father's behalf and requested that the hearing be continued until after Father's expected date of release from the DOC (about four months). Father had been remanded to the DOC based on his failure to adhere to his probation reporting requirements. In considering the efficacy of a continuance, the trial court could reflect on Father's patterns with respect to attendance, communication, and participation when he was not incarcerated. *See, e.g.*, Appellant's App. at 15-16 (trial court's findings, all of which are unchallenged, describing Father as "missing" hearings and meetings, "fail[ing] to appear," and making "himself unavailable," as well as statements that he "did not participate" and "did not visit."). Father's lack of communication with counsel shows that he had little interest in assisting in the preparation of his case. Even so, during the

termination hearing, the trial court cleared the courtroom and afforded him the opportunity to consult privately with counsel. In this way, Father was afforded the opportunity to assist in the presentation of his case. Simply put, counsel presented evidence and questioned witnesses on Father's behalf, and Father participated in the hearing telephonically. Father has failed to establish how he would have better assisted counsel in preparing and presenting his case had a continuance been granted. Thus, he has failed to demonstrate any prejudice stemming from the trial court's ruling. Based on the foregoing, we conclude that the trial court acted within its discretion in denying his request for continuance.

## Section 2 – The trial court acted within its discretion in denying Father's motion for order to transport.

[12] In a closely related argument, Father maintains that the trial court abused its discretion in denying his motion for order to transport him from the correctional facility in Edinburgh to the courtroom in Indianapolis. As stated, a parent does not have an absolute right to be physically present during a termination hearing. *C.G.*, 954 N.E.2d at 921. The decision whether to permit an incarcerated parent to be transported to court in termination proceedings is a matter within the trial court's sound discretion. *Id.* at 922.

[13] In *C.G.*, our supreme court addressed the varying approaches to transport orders and adopted the approach taken by West Virginia courts, which states

that in exercising its discretion, the trial court should balance the following factors:

> (1) The delay resulting from parental attendance; (2) the need for an early determination of the matter; (3) the elapsed time during which the proceeding has been pending; (4) the best interests of the child(ren) in reference to the parent's physical attendance at the termination hearing; (5) the reasonable availability of the parent's testimony through a means other than his or her attendance at the hearing; (6) the interests of the incarcerated parent in presenting his or her testimony in person rather than by alternate means; (7) the [e]ffect of the parent's presence and personal participation in the proceedings upon the probability of his or her ultimate success on the merits; (8) the cost and inconvenience of transporting a parent from his or her place of incarceration to the courtroom; (9) any potential danger or security risk which may accompany the incarcerated parent's transportation to or presence at the proceedings; (10) the inconvenience or detriment to parties or witnesses; and (11) any other relevant factors.

*Id*. at 922-23 (quoting *State ex rel. Jeanette H. v. Pancake*, 529 S.E.2d 865, 877 (W.Va. 2000)) (footnote omitted).

[14] When Father first requested an order to transport him from Edinburgh to Indianapolis for the termination proceedings, the trial court ruled that he could appear by video feed. He later renewed his motion, and counsel noted that the Edinburgh facility was not equipped to allow inmates to testify by video. The trial court denied the motion and ordered that Father testify telephonically. At the final factfinding hearing, Father again renewed his motion for order to transport. The trial court denied the renewed motion and emphasized that it

had considered the *C.G.* factors in making its ruling. *See* Tr. at 9-10 ("the Court did consider the factors that were handed down in the … Indiana Supreme court case in the matter of C.G. … and denied the motion to transport. If [Father] were closer, that would be a consideration by far. This is … the best way we can have him appear").

[15] In his brief, Father goes through each of the eleven factors outlined in *C.G.* and decries the absence of a trial court finding on each of the factors. However, *C.G.*'s list comprises factors to be considered, not elements to be proven. 954 N.E.2d at 922-23. The list is clearly nonexhaustive, as factor eleven reads, "any other relevant factors." *Id.* at 923. There is nothing in *C.G.* to indicate that the trial court must make findings, written or otherwise, on each and every factor on the list. In making its final ruling on Father's motion, the trial court clearly stated that it had considered the factors outlined in *C.G.* and then specifically emphasized the factors that it found compelling, that is, the cost and inconvenience factor and the availability of testimony by another reasonable means. We do not read *C.G.* to require the trial court to specify that it did not find certain factors compelling or even relevant to Father's case. In other words, having considered the logistical issues surrounding an order to transport an inmate from the Edinburgh correctional facility to the juvenile courtroom in Indianapolis, the court reasoned that Father's participation could be achieved by another means. Having first attempted to secure his participation by video feed and been notified that a video feed was unavailable, the court secured Father's attendance by telephone. Father's telephonic participation did not

merely amount to phoning in his testimony and hanging up. Rather, he was connected such that he could hear witness testimony and counsel's arguments before the court, as well as the court's responses and pronouncements. At one point, the trial court had to caution Father for interrupting an in-court witness during her testimony. Tr. at 52. As in *C.G.*, the trial court undertook the procedural safeguard of clearing the courtroom to afford Father the opportunity to confer privately with counsel by phone. *C.G.*, 954 N.E.2d at 921.

[16] Father posits that the outcome of his case hinged on a dispute between himself and DCS family case manager Betty Kubwalo ("the FCM") as to whether he had been made aware of the services in which he was expected to participate. In other words, he asserts that the trial court abused its discretion by failing to consider that taking his testimony by telephone would affect the court's ability to judge his credibility, thus adversely affecting the "probability of his … ultimate success on the merits." *Id*. at 923. Father correctly asserts "that trial judges are in the best place to assess witness credibility, and by not having a parent present at a termination hearing, a trial judge is not as easily able to ascertain the credibility of a witness over the phone." *Id*. at 921. Nevertheless, we are unpersuaded by his claim that his case turned on the resolution of the dispute between himself and DCS concerning his knowledge of the services offered. First, "the law concerning termination of parental rights does not require [DCS] to offer services to the parent to correct the deficiencies in childcare." *In re B.D.J.*, 728 N.E.2d 195, 201 (Ind. Ct. App. 2000). Moreover, despite the disagreement between Father and the FCM as to who had had

access to whose contact information and who should have initiated phone contact concerning services, Father admitted (1) that he remembered the CHINS court having ordered him to participate in certain services; (2) that the FCM was present but he did not ask her how to complete the services; and (3) that he "should've asked her." Tr. at 38-39. With respect to visitation, Father visited J.E. only twice since his birth, once just days after J.E. was born and once during the four months he was not incarcerated. Sadly, he admitted that he had decided to forgo opportunities to visit J.E. because he "was going through so much stuff," "couldn't bear to go see [his] child," and thought he "would just bypass that [and] get [his] stuff together." *Id.* at 20.

[17] Finally, we find it unfortunate that Father, having made himself unavailable for these proceedings due to incarceration based on his previous failures to appear and report, did not appear when he was free and ordered to do so. The trial court considered the factors outlined in *C.G.* and found a reasonable alternate means of securing Father's participation in the termination factfinding hearing. The record confirms that in addition to being represented in person by counsel, Father was himself engaged in the hearing. His telephonic participation effectively afforded him "the opportunity to be heard at a meaningful time and in a meaningful manner." *C.G.*, 954 N.E.2d at 917. Based on the foregoing, we conclude that the trial court acted within its discretion in denying his motion for order to transport. Accordingly, we affirm.

Affirmed.

May, J., and Bradford, J., concur.