# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 24 2016, 7:51 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Christopher D. Kehler
Kehler Law Firm, PC
Warsaw, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Robert J. Henke
Deputy Attorney General

David E. Corey
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Termination of the Parent-Child Relationship of J.B. (Minor Child),

A.C.,

*Appellant-Respondent,*

v.

Indiana Department of Child Services,

*Appellee-Petitioner.*

May 24, 2016

Court of Appeals Case No.
43A03-1509-JT-1520

Appeal from the Kosciusko Superior Court

The Honorable David C. Cates, Judge

Trial Court Cause No.
43D01-1412-JT-413

**Najam, Judge.**

## Statement of the Case

A.C. ("Mother") appeals the trial court's termination of her parental rights over her minor child, J.B. ("Child"). Mother raises two issues for our review, namely:

1. Whether the trial court abused its discretion in denying Mother's motion to continue the termination hearing.

2. Whether the trial court's termination of Mother's parental rights was clearly erroneous.

We affirm.

## Facts and Procedural History

Mother gave birth to Child on October 20, 2012.[1] In November 2013, Indiana Department of Child Services ("DCS") investigated a report that Mother was using methamphetamine. After Mother admitted that she was using methamphetamine, DCS filed a petition for an informal adjustment, which the trial court approved on December 18. Both Mother and Child tested positive for methamphetamine on January 4, 2014, and, on January 13, DCS filed a petition alleging Child was a child in need of services ("CHINS") and obtained

---

[1] Child's father has not been identified but is alleged to be J.B., who does not participate in this appeal.

an emergency order from the trial court to remove Child from Mother's care. On January 23, the trial court determined that Child was a CHINS.

[4] On January 24, the State charged Mother with neglect of a dependent, as a Class D felony; possession of methamphetamine, as a Class D felony; and possession of paraphernalia, as a Class A misdemeanor. Mother was taken into custody while those charges were pending. She pleaded guilty to the two D felonies, and the State dismissed the misdemeanor charge. For each of the D felonies, the trial court sentenced Mother to two years' incarceration, with credit for time served and the balance suspended to probation, and sentences to be served concurrently.

[5] Following a dispositional hearing in February, the trial court ordered Mother to: maintain appropriate housing; maintain a legal source of income; submit to random drug screens; complete a substance abuse assessment and follow all recommendations; complete a parenting risk assessment and follow all recommendations; and visit Child.

[6] On December 16, 2014, DCS filed a petition for the involuntary termination of Mother's parental rights to Child. The trial court set the matter for an evidentiary hearing and Mother subsequently requested and was granted two continuances of that hearing. At the beginning of the June 15, 2015, evidentiary hearing, counsel for Mother requested another continuance of the hearing to give Mother more time to meet the DCS requirements of her. The trial court denied that motion and, following the hearing, the trial court entered

the following relevant findings and conclusions in support of terminating

Mother's parental rights:

> 9. The Child was removed from Mother's home following both Mother's failure to comply with an informal adjustment necessitated due to the Mother's admission and positive test for methamphetamine, and both Child and Mother testing positive for methamphetamine and amphetamines. . . .

> * * *

> 11. Mother failed and refused to complete a parenting risk assessment despite referral from DCS.

> 12. Mother completed a substance abuse assessment pursuant to DCS referral but failed and refused to comply with the rules of treatment and did not successfully complete a substance abuse program, being unsuccessfully discharged from her program.

> 13. Mother failed to consistently submit to random drug screens and did not remain drug-free, having tested positive [for drugs] on at least four (4) occasions subsequent to entry of the Court's Dispositional Order herein.

> 14. Mother failed and refused to visit with the Child from and after October 2014.

> 15. Mother has failed and refused to obtain and maintain stable drug-free housing nor has Mother secured a legal source of income.

> 16. Mother was incarcerated subsequent to entry of Dispositional Order herein for Felony Neglect of a Dependent and Possession of Methamphetamine.

17. Mother was released from incarceration in May of 2014 but returned to incarceration due to a probation violation cause[d] by a failed drug screen and her failure to complete substance abuse treatment.

18. While incarcerated Mother attended AA/NA meetings and attended Mothers Against Meth meetings[] but failed to comply with the recommendations of the assessments to which she was previously directed.

19. Due to Mother's criminal offenses[,] she has been unable to develop and maintain a relationship with the Child, who has been removed from the care of Mother for more than one-half (1/2) of the Child's life.

* * *

24. Neither Child's Mother nor the Child's Alleged Father have been compliant with the Court's Dispositional Order.

25. Permanency is in the Child's best interests and the Child needs permanency and stability for her well-being[,] which permanency and stability neither parent can provide.

26. DCS has a satisfactory plan for the care and treatment of the Child and . . . for permanency and stability of the Child, namely, adoption.

27. The Child has bonded with her current relative placement and removing the Child from that placement will be detrimental to the Child's well-being and development.

28. Current placement is ready, willing and able to adopt the Child if parental rights are terminated, which adoption is a satisfactory plan for the care and treatment of the Child.

29.  Since initiation of DCS involvement with this family, . . . neither Mother nor Alleged Father have taken advantage of the services [offered by DCS].

* * *

31.  While the Child has been in the care of the current relative placement, the Child has made progress with regards to issues with which the Child had previously suffered, including, but not limited to, anxiety, inappropriate sexual behaviors, and inappropriate reactions to emotions.

32.  The Child is happy and content in her current placement and removal from that placement would be detrimental to the Child.

* * *

37.  The Child has been removed from her parent for at least six (6) months under a Dispositional Decree, and has been removed from her parent under the supervision of DCS for at least fifteen (15) of the most recent twenty-two (22) months beginning with the date the Child was removed from the home as a result of being a Child in Need of Services.

38.  There is a reasonable probability that conditions resulting in the Child's removal for reasons of placement outside the home of the parents would not be remedied.

39.  There is a reasonable probability that the continuation of the parent/child relationship poses a threat to the well-being of the Child.

40.  Termination is in the best interests of the Child.

41.  There is a satisfactory plan for the care and treatment of the Child, namely, adoption.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED by this Court that:

1. The parent/child relationship of the Child, . . . , and the Child's Mother, . . . , be and is hereby terminated.

Appellant's Amended Br. at 36-41. This appeal ensued.

# Discussion and Decision

### Issue One: Motion to Continue

[7] First, Mother contends that the trial court erred in denying her motion to continue the June 15, 2015, fact finding hearing. The decision to grant or deny a motion for continuance is within the sound discretion of the trial court, and we will reverse only for an abuse of that discretion. *C.C. v. v. Ind. Dep't of Child Servs.* (*In re K.W.*), 12 N.E.3d 241, 243-44 (Ind. 2014). An abuse of discretion occurs where the trial court reaches a conclusion that is clearly against the logic and effect of the facts or the reasonable and probable deductions that may be drawn therefrom. *K.E. v. Ind. Dep't of Child Servs.* (*In re J.E.*), 45 N.E.3d 1243, 1246 (Ind. Ct. App. 2015), *trans. denied*. A denial of a continuance is an abuse of discretion if the moving party has demonstrated good cause for granting the motion. *Id.*; *see* Ind. Trial Rule 53.5. However, no abuse of discretion will be found where the moving party has not shown prejudice from the denial of the continuance. *In re J.E.*, 45 N.E.3d at 1246.

[8] Here, Mother has failed to show good cause for granting the continuance. Her sole reason for requesting a continuance was that she wanted "additional time

to meet the requirements set forth in the CHINS case so that she can avoid a termination." Tr. at 6. However, Mother had already been given ample opportunity to comply with those requirements. At the time of Mother's motion, the underlying CHINS case had been pending for approximately seventeen months, during which time Mother repeatedly failed to take advantage of services offered by DCS or comply with requirements imposed by DCS and the trial court. Moreover, Mother had already requested and been granted two prior continuances of the fact finding hearing. The trial court did not abuse its discretion in denying Mother's third request for a continuance of that hearing.

### Issue Two: Termination of Parental Rights

[9] Mother also maintains that the trial court's order terminating her parental rights was clearly erroneous. We begin our review of this issue by acknowledging that "[t]he traditional right of parents to establish a home and raise their children is protected by the Fourteenth Amendment of the United States Constitution." *Bailey v. Tippecanoe Div. of Family & Children (In re M.B.)*, 666 N.E.2d 73, 76 (Ind. Ct. App. 1996), *trans. denied*. However, a trial court must subordinate the interests of the parents to those of the child when evaluating the circumstances surrounding a termination. *Schultz v. Porter Cnty. Ofc. of Family & Children (In re K.S.)*, 750 N.E.2d 832, 837 (Ind. Ct. App. 2001). Termination of a parent-child relationship is proper where a child's emotional and physical development is threatened. *Id.* Although the right to raise one's own child should not be terminated solely because there is a better home available for the child, parental

rights may be terminated when a parent is unable or unwilling to meet his or her parental responsibilities. *Id.* at 836.

[10] Before an involuntary termination of parental rights can occur in Indiana, DCS is required to allege and prove, among other things:

> (B) that one (1) of the following is true:
>
>> (i)  There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
>>
>> (ii)  There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
>>
>> (iii)  The child has, on two (2) separate occasions, been adjudicated a child in need of services.
>
> * * *
>
> (C) [and] that termination is in the best interests of the child . . . .

Ind. Code § 31-35-2-4(b)(2). DCS need establish only one of the requirements of subsection (b)(2)(B) before the trial court may terminate parental rights. *Id.* DCS's "burden of proof in termination of parental rights cases is one of 'clear and convincing evidence.'" *R.Y. v. Ind. Dep't of Child Servs. (In re G.Y.)*, 904 N.E.2d 1257, 1260-61 (Ind. 2009) (quoting I.C. § 31-37-14-2).

[11] When reviewing a termination of parental rights, we will not reweigh the evidence or judge the credibility of the witnesses. *Peterson v. Marion Cnty. Ofc. of Family & Children (In re D.D.)*, 804 N.E.2d 258, 265 (Ind. Ct. App. 2004), *trans. denied*. Instead, we consider only the evidence and reasonable inferences that are most favorable to the judgment. *Id.* Moreover, in deference to the trial court's unique position to assess the evidence, we will set aside the court's judgment terminating a parent-child relationship only if it is clearly erroneous. *Judy S. v. Noble Cnty. Ofc. of Family & Children (In re L.S.)*, 717 N.E.2d 204, 208 (Ind. Ct. App. 1999). *trans. denied*.

[12] Here, in terminating Mother's parental rights, the trial court entered specific findings of fact and conclusions thereon. When a trial court's judgment contains special findings and conclusions, we apply a two-tiered standard of review. *Bester v. Lake Cnty. Ofc. of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). First, we determine whether the evidence supports the findings and, second, we determine whether the findings support the judgment. *Id.* "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." *Quillen v. Quillen*, 671 N.E.2d 98, 102 (Ind. 1996). If the evidence and inferences support the trial court's decision, we must affirm. *In re L.S.*, 717 N.E.2d at 208.

[13] Mother contends that the trial court erred in both its findings of fact and its conclusions of law. As to the latter, she alleges that the trial court erred in concluding that she will not remedy the conditions that resulted in Child's removal; that the continuation of the parent-child relationship poses a threat to

the well-being of Child; and that termination is in the best interest of Child. Because Indiana Code Section 31-35-2-4(b)(2)(B) is written in the disjunctive, we only address whether the trial court erred in concluding that Mother will not remedy the conditions that resulted in Child's removal and that termination is in Child's best interest. We address each of Mother's contentions after we briefly address her challenge to specific findings of fact entered by the trial court.

### *Trial Court's Findings of Fact*

[14] First, Mother contends that the evidence did not support the trial court's following findings of fact: Findings 14, 18, 25, and 27. Findings of Fact 25 and 27 are supported by the evidence,[2] and Mother's assertions to the contrary are simply requests that we reweigh the evidence, which we will not do. And, even assuming Findings of Fact 14 and 18 are clearly erroneous, the decision of the trial court is supported by the remainder of the findings, as noted below, and the portions challenged by Mother may be treated as surplusage. *Lasater v. Lasater*, 809 N.E.2d 380, 397 (Ind. Ct. App. 2004). Moreover, Mother has shown no prejudice from Findings 14 and 18 that would warrant reversal of the court's judgment on appeal. *Id*.

---

[2] Mother asserts there is no evidence that Child lacked permanency, as noted in Finding 25; however, there is sufficient evidence that Mother's consistent drug use resulted in Child being removed from her home and put into various foster placements over a significant period of time. There is also sufficient evidence that Child was happy and stable in her current relative placement such that removal from the placement would be harmful, as stated in Finding 27.

## *Conditions that Resulted in Child's Removal*

[15] Mother maintains that the trial court erred in finding a reasonable probability that the conditions that resulted in Child's removal will not be remedied. In making this determination, we engage in a two-step analysis. *E.M. v. Ind. Dep't of Child Servs.* (*In re E.M.*), 4 N.E.3d 636, 643 (Ind. 2014). "First, we identify the conditions that led to removal; and second, we determine whether there is a reasonable probability that those conditions will not be remedied. *Id.* (quotations and citations omitted). In the second step, the trial court must judge a parent's fitness to care for his or her children at the time of the termination hearing, taking into consideration evidence of changed conditions. *Id.* However, the court must also "evaluate the parent's habitual patterns of conduct to determine the probability of future neglect or deprivation of the child." *Moore v. Jasper Cnty. Dep't of Child Servs.*, 894 N.E.2d 218, 226 (Ind. Ct. App. 2008) (quotations and citations omitted). Pursuant to this rule, courts have properly considered evidence of a parent's prior criminal history, drug and alcohol abuse, history of neglect, failure to provide support, and lack of adequate housing and employment. *Id.* Moreover, DCS is not required to rule out all possibilities of change; rather, it need establish only that there is a reasonable probability the parent's behavior will not change. *Id.*

[16] Here, the evidence showed that, initially, an informal adjustment was necessary due to Mother admitting to taking, and testing positive for, methamphetamine and amphetamines. The evidence shows that Mother subsequently failed to comply with the informal adjustment not only by testing positive for

methamphetamine herself but also by Child testing positive for that drug. Mother's failure to comply resulted in the Child's removal from Mother's home, the filing of a CHINS action and criminal charges against her, and her subsequent incarceration for felony neglect of Child and possession of methamphetamine. Yet, upon Mother's release from incarceration, she again failed to remain drug-free. In violation of her probation, she once again tested positive for drugs and failed to complete substance abuse treatment, resulting in her return to jail.

[17] Mother's history of drug abuse and consistent failure to remain drug-free, along with other evidence of her consistent failure to comply with DCS requirements both in the informal adjustment and the CHINS case, support the trial court's conclusion that the conditions that resulted in Child's removal will not be remedied. On appeal, Mother points to evidence tending to show that she has taken steps in the right direction during her most recent incarceration. However, the trial court was entitled to give more weight to evidence of how Mother behaved when she was *not* incarcerated than to evidence of how she behaved while she was restricted by the realities of incarceration. *See, e.g.*, *R.K. v. Ind. Dep't of Child Servs.* (*In re S.E.*), 15 N.E.3d 37, 46 (Ind. Ct. App. 2014) (quoting *In re E.M.*, 4 N.E.3d at 643), *trans. denied*. Mother's contentions on appeal amount to a request that we reweigh the evidence, which we will not do. The trial court did not err in concluding that the conditions at the time of Child's removal will not be remedied.

## Best Interests

[18] In determining whether termination of parental rights is in the best interests of a child, the trial court is required to look at the totality of the evidence. *A.S. v. Ind. Dep't of Child Servs. (In re A.K.)*, 924 N.E.2d 212, 224 (Ind. Ct. App. 2010). "A parent's historical inability to provide adequate housing, stability and supervision coupled with a current inability to provide the same will support a finding that termination of the parent-child relationship is in the child's best interests." *Castro v. State Ofc. of Family & Children*, 842 N.E.2d 367, 374 (Ind. Ct. App. 2006), *trans. denied*. "Additionally, a child's need for permanency is an important consideration in determining the best interests of a child, and the testimony of the service providers may support a finding that termination is in the child's best interests." *In re A.K.*, 924 N.E.2d at 224. Such evidence, "in addition to evidence that the conditions resulting in removal will not be remedied, is sufficient to show by clear and convincing evidence that termination is in the child's best interests." *L.S. v. Ind. Dep't of Child Servs. (In re A.D.S.)*, 987 N.E.2d 1150, 1158-59 (Ind. Ct. App. 2013), *trans. denied*.

[19] Again, Mother's contentions on this issue amount to requests that we reweigh the evidence, which we will not do. Both Lindsay Saylor, a DCS family case manager, and Shannon Johnson, Child's Court Appointed Special Advocate ("CASA"), testified that termination of Mother's parental rights is in Child's best interest. Given that testimony, in addition to evidence that Child needs permanency and stability that Mother cannot provide and that the reasons for Child's removal from Mother will not be remedied, we hold that the totality of

the evidence supports the trial court's conclusion that termination is in Child's best interest. The trial court did not err when it terminated Mother's parental rights to Child.

[20] Affirmed.

Riley, J., and May, J., concur.