## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 16 2018, 8:38 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Erin L. Berger
Evansville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General

Abigail R. Recker
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In re the Termination of the Parent-Child Relationship of M.A. (Minor Child) and F.R. (Father)

F.R. (Father),

*Appellant-Respondent,*

v.

Indiana Department of Child Services,

*Appellee-Petitioner*

July 16, 2018

Court of Appeals Case No.
18A-JT-459

Appeal from the Vanderburgh Superior Court

The Honorable Brett J. Niemeier, Judge

The Honorable Renee A. Ferguson, Magistrate

Trial Court Cause No.
82D04-1704-JT-687

**Vaidik, Chief Judge.**

# Case Summary

[1] F.R. ("Father") appeals the termination of his parental rights to his son, arguing that the trial court should have granted his motion to continue the termination hearing in order to allow his federal criminal case to be resolved. Because there appears to be no imminent end in sight for Father's criminal troubles, the trial court did not abuse its discretion in denying his motion to continue. We therefore affirm.

# Facts and Procedural History

[2] The facts that follow are taken primarily from the trial court's findings of fact, none of which Father challenges on appeal. M.A. ("Child") was born in December 2010 to J.A. ("Mother") and Father. Father was incarcerated at the time of Child's birth and has been incarcerated for "the majority of the time since." Appellant's App. Vol. II p. 17. Mother brought Child to jail to visit Father shortly after Child's birth. After a small number of these jail visits, Father did not see Child again for "approximately five years." *Id.*

[3] In August 2014, while Father was in prison for burglary, attempted robbery, and criminal confinement,[1] the Indiana Department of Child Services (DCS) received a report of abuse and/or neglect alleging that Mother used illegal

---

[1] Father was charged with these crimes in August 2010 and was sentenced to fifteen years in July 2011. *See* 82C01-1008-FA-943.

substances while Child was in her care.  Mother admitted using methamphetamine.  Child was removed from Mother on August 7 and placed with his maternal grandparents.  A few days later, DCS filed a petition alleging that Child was a child in need of services (CHINS).  Child was adjudicated a CHINS in October, and a dispositional decree was entered as to Mother in December.  About ten months later, in October 2015, DCS filed a petition to terminate Mother's parental rights.[2]

[4]  In December 2015, it was determined that Father had not received notice of the CHINS proceedings because of his incarceration.  *See id.* at 5.  Accordingly, an initial hearing on the CHINS petition was scheduled for Father for February 2016.  Father, who was still in prison, appeared by telephone.  Father did not object to the CHINS finding; however, he told the trial court that he was going to be released from prison soon and wanted to participate in services.  The court set the dispositional hearing for March 29, after Father's release.  In the meantime, the court ordered Child to remain with his maternal grandparents and Father to contact DCS upon his release from prison.

[5]  Father was released from prison on March 9 and placed on parole with a "maximum release [of] 2025."  Tr. p. 88; Ex. 9.  At the dispositional hearing, the trial court ordered Father to participate in Father Engagement Services, attend visits with Child (starting with therapeutic visits and then progressing

---

[2] Mother's parental rights to Child were terminated in a separate cause number.

from supervised to unsupervised visits), secure and maintain stable and appropriate housing, remain drug and alcohol free, and obey the law.

[6] Initially, Father was very successful. He completed Father Engagement, and in the fall of 2016 he obtained his own housing. In the spring of 2017, Father was bonding with Child and had progressed from supervised visits to monitored visits. In March 2017—one year after Father was released from prison—"the family case manager was very close to recommending a trial home visit so that the child could be placed with Father" when he was arrested in two separate incidents. Appellant's App. Vol. II p. 18.

[7] That is, on March 3, 2017, Father drove his car into a gasoline pump at a gas station in Vanderburgh County. When police officers arrived, the car was still in drive and Father was passed out in the driver's seat. After putting the car in park, officers saw a glass pipe and brown bag next to Father in the car. Residue on the pipe field-tested positive for marijuana, and methamphetamine and pills were found in the car. After being roused, Father was very lethargic and disoriented for quite some time. The State charged Father with Level 2 felony dealing in methamphetamine and Level 3 felony possession of methamphetamine under Cause No. 82C01-1703-F2-1261 ("Cause No. 1261"). The State also alleged that Father was a habitual offender. Father was released on bond.

[8] Ten days after driving into the gas pump, on March 13, a car in which Father was a passenger was pulled over. Father was found to be in possession of

handguns and drugs. The State charged him with Level 3 felony dealing in methamphetamine and Level 4 felony unlawful possession of a firearm by a serious violent felon in Cause No. 82C01-1703-F3-1448 ("Cause No. 1448"). The State also alleged that Father was a habitual offender.

[9] The next month, DCS filed a petition to terminate Father's parental rights. Child was six years old at the time and had been living with his maternal grandparents since he was removed from Mother in August 2014. The plan was for Child's maternal grandparents to adopt him.[3]

[10] In June 2017, a federal grand jury in the Southern District of Indiana returned an indictment charging Father with being a felon in possession of a firearm in connection with the March 13 incident. No. 3:17-cr-29-RLY-MPB (S.D. Ind. June 29, 2017).

[11] In July 2017, the State filed motions to dismiss the charges in Cause Nos. 1261 and 1448. In Cause No. 1261, the State alleged that because "Defendant has been federally indicted on facts unrelated to this case and is unlikely to be available for prosecution in this case in a timely manner," it would be "more judicially efficient to dismiss this case at the present time." Cause No. 82C01-1703-F2-1261 (July 12, 2017). In Cause No. 1448, the State requested dismissal because "Defendant has been federally indicted on the facts of this cause."

---

[3] Mother's parental rights to her other children (Child's half-siblings) were also terminated, and maternal grandparents have adopted them.

Cause No. 82C01-F3-1448 (July 6, 2017). The State asked that both dismissals be without prejudice, leaving open the possibility of the charges being re-filed. The court granted both of the State's motions to dismiss.

[12] A fact-finding hearing was held in Father's termination case in November 2017. Father appeared by telephone. At the beginning of the hearing, Father's attorney asked for a continuance because there was a "date certain now set for his jury trial [in federal court]. Set for February 20, 2018." Tr. p. 18. Father's attorney also noted that a motion to suppress had been filed and "all that remains is for the Court to make its decision, which will be due momentarily." *Id.* at 19. Father's attorney therefore asked for a continuance "at least until that February date . . . ." *Id.* In the alternative, Father's attorney asked the trial court to "keep the record open for the single and sole purpose of allowing [Father] to present an updated copy of the criminal docket sheet so that if there is a significant finding or development in the case," the court could consider that in determining whether to terminate Father's parental rights. *Id.* DCS objected, arguing that Child's need for permanency outweighed Father's need for additional time and that Father's federal charge was "just one in a line of criminal charges that reflect Father's pattern of behavior." *Id.* at 20. The court denied the motion to continue as well as Father's request to keep the record open until February, and the fact-finding hearing was held as scheduled.

[13] Father's parole officer testified that Father was still on parole and that "[w]e cannot make any parole decision until . . . the Federal charge[] [is] disposed of." *Id.* at 91. The parole officer said that even if the federal charge was

dismissed, "just based on the evidence we have from the affidavit of probable cause, we find enough evidence to have him revoked to meet back with the Parole Board." *Id.* The parole officer further testified that Father had a "maximum release [of] 2025" but that he couldn't predict what the Parole Board would decide. *Id.* at 88. However, the parole officer testified that if Father was sent to a state facility, the "maximum would be half that time." *Id.* at 91.

[14] The trial court issued an order terminating Father's parental rights in February 2018. The court addressed Father's pending criminal matters as follows:

> 8. Father argues that because his Federal charges could be resolved in his favor, and because the Indiana charges have been dismissed, that he should be given additional time to complete services and be reunified with the child. However, Father's parole officer confirmed that while the Indiana charges were dismissed without prejudice, the actions which led to those charges are still the basis for parole revocation allegations which Father will be facing if and when the Federal charges were no longer being pursued. If violations of parole were proven, Father's release date could potentially be as far out as the year 2025. As such, there is no definitive time frame for resolution of Father's criminal matters.

* * * * *

> 10. Father additionally admits that he did not stay drug and alcohol free during the CHINS matter. Given Father's long history of substance use and relapse even after prior court intervention and incarceration, it is unlikely that Father will remain sober after release from incarceration.

11. Father has a criminal history spanning years and multiple felony level crimes to which he either pled guilty or was found guilty. Father's criminal history includes numerous convictions for crimes related to drugs and violence. Although a number of those occurred prior to the birth of his child, Father testified that he has four other children, the oldest of which is eighteen (18) years old, meaning that Father has shown a pattern of choosing drugs and crime while knowing that children are dependent on him for many years.

Appellant's App. Vol. II pp. 18-19.

Father then filed a notice of appeal. After Father and DCS filed their appellate briefs, the district court, on June 4, 2018, issued an order excluding the guns from evidence in the federal firearm-possession case on the ground that the search of the car in which Father was a passenger on March 13, 2017, violated his Fourth Amendment rights.[4] No. 3:17-cr-29-RLY-MPB, 2018 WL 2561012, --- F. Supp. 3d --- (S.D. Ind. June 4, 2018). The United States filed a motion to reconsider that ruling, which the district court denied on June 29, 2018. No. 3:17-cr-29-RLY-MPB (S.D. Ind. June 29, 2018).

---

[4] Father actually filed two motions to suppress. The first one was filed in August 2017, which the district court denied in January 2018. Father then proceeded to trial in March 2018. Father renewed his motion to suppress during trial, and the district court took it under advisement and proceeded with the evidence. The trial ultimately ended in a mistrial, and on March 29 Father filed his second motion to suppress.

# Discussion and Decision

Father raises a single issue on appeal. That is, he contends that the trial court erred in denying his motion to continue the termination hearing so that he "could present a clear picture of his incarceration and release date for reunification." Appellant's Br. p. 12. Father claims that a continuance would have given him "the opportunity to resolve his criminal matters, be released from incarceration, and then have the ability to participate in services aimed at giving him the chance at parenthood." *Id.* at 15.

Generally, the decision to grant or deny a motion to continue is within the sound discretion of the trial court, and we will reverse only for an abuse of discretion. *In re J.E.*, 45 N.E.3d 1243, 1246 (Ind. Ct. App. 2015), *trans. denied*. An abuse of discretion occurs when the trial court's conclusion is clearly against the logic and effect of the facts and circumstances before the court or the reasonable and probable deductions to be drawn therefrom. *Id.* When a motion to continue has been denied, an abuse of discretion will be found if the moving party has demonstrated good cause for granting the motion, but we will reverse the trial court's decision only if the moving party can show that he was prejudiced by the denial. *Id.*

In support of his argument that the trial court erred in denying his motion to continue the termination hearing, Father relies heavily on this Court's opinion in *Rowlett v. Vanderburgh County Office of Family & Children*, 841 N.E.3d 615 (Ind. Ct. App. 2006), *trans. denied*. We recently addressed *Rowlett* in *In re A.S.*, No.

53A01-1710-JT-2340, 2018 WL 1833504, --- N.E.3d --- (Ind. Ct. App. Apr. 18, 2018) (publication ordered May 7, 2018). In that case, we summarized *Rowlett* as follows:

> In *Rowlett*, the father was arrested and charged with dealing in methamphetamine two months after his children were adjudicated CHINS. The father was unable to participate in services with the Office of Family and Children (OFC) because of his incarceration, but he participated in "nearly 1,100 hours of individual and group services" directed at reunification with his children. The OFC petitioned to terminate the father's parental rights while he was incarcerated. At a pre-trial conference in January 2005, the father informed the court that he would be released in June 2005 and asked that the termination hearing be set after his release. The court denied his request and set the hearing for April 2005, approximately six weeks before the father's release date. The father's parental rights were terminated.
>
> The father appealed and claimed that the trial court abused its discretion when it denied his motion for continuance. He argued that he should have been given the opportunity to engage in reunification services and establish himself within his community. The OFC, on the other hand, stated that the children had been removed from the father for over two years and needed permanency. The children had been placed with their maternal grandmother for the duration of the CHINS and termination proceedings, and the OFC's plan was for her to adopt the children if the father's rights were terminated.
>
> This Court held that good cause for granting the father's continuance existed because it would have granted him an opportunity to "participate in services offered by the OFC directed at reunifying him with his children upon his release from prison." The OFC would have to wait only six weeks for the

father to be released. We also held that the father was prejudiced by the decision because the trial court assessed his ability to care for his children "as of the date of the hearing he sought to have continued." We went on to say that termination was "particularly harsh where Father, while incarcerated, participated in numerous services and programs . . . which would be helpful to him in reaching his goal of reunification with his children." Because the OFC's plan was for the children to be adopted by the maternal grandmother and they had been in her care since removal, we concluded that continuation of the termination hearing "would have little immediate effect upon the children." We ultimately concluded that the trial court abused its discretion in denying the father's motion for continuance and that the hearing should have been reset "after Father was given a sufficient period following his release to demonstrate his willingness and ability to assume parental duties."

*In re A.S.*, 2018 WL 1833504, at *3 (citations omitted).

[19] We then applied *Rowlett* to the facts in *A.S.* and concluded that the father in *A.S.* was "situated similarly to the father in *Rowlett*":

> First, like the father in *Rowlett*, Father was on the verge of significant, favorable change in his incarceration status. He was twenty-four days shy of graduating from Purposeful Incarceration, which would result in a guaranteed sentence modification. Second, any additional delay in the termination proceedings would not negatively impact A.S. Similar to the children in *Rowlett*, A.S. has been in the same foster home since her removal, and DCS's plan was for her foster parents to adopt her if Father's parental rights were terminated. A.S. was also bonded with Father and was affectionate toward him, sitting in his lap when he read to her and blowing him kisses and waving goodbye. For these reasons, we conclude that good cause existed at the time of Father's motion and that the trial court should have

continued the case at least long enough to see if Father graduated from Purposeful Incarceration and, if so, the extent to which [the court] modified his sentence.

*Id.* at *4.

[20] We find that this case is easily distinguishable from both *Rowlett* and *A.S.*, as Father has not demonstrated that he was on the verge of a significant, favorable change in his incarceration status. This is so even considering that the district court recently granted Father's motion to suppress the guns and then denied the government's motion to reconsider that ruling. The government can appeal the district court's decision. *See* 18 U.S.C. § 3731. And further assuming that the federal charge is ultimately dismissed, there is the possibility that Father will be re-charged, at the very least, with the offenses in Cause No. 1261, as they were dismissed "without prejudice." Moreover, Father was on parole when he committed the March 2017 offenses, and his parole officer testified at the termination hearing that Father's maximum release was 2025 and that he faced time in prison for violating his parole. Accordingly, we conclude that Father has failed to show that good cause existed at the time of his motion to continue. Unlike the fathers in both *Rowlett* and *A.S.*, there appears to be no imminent end in sight for Father's criminal troubles. The trial court therefore did not abuse its discretion in denying Father's motion to continue the termination hearing.

[21] Affirmed.

Pyle, J., and Barnes, Sr. J., concur.