FILED

May 11 2026, 9:28 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



IN THE

# Court of Appeals of Indiana

In the Matter of the Termination of the Parent-Child Relationship of C.J.B. (Minor Child);

A.B. (Father),

*Appellant-Respondent*

v.

Indiana Department of Child Services,

*Appellee-Petitioner*

---

May 11, 2026

Court of Appeals Case No.
25A-JT-3154

Appeal from the Dearborn Circuit Court

The Honorable F. Aaron Negangard, Judge

Trial Court Cause No.
15C01-2506-JT-12

---

**Opinion by Chief Judge Tavitas**
Judges Bailey and Foley concur.

**Tavitas, Chief Judge.**

## Case Summary

A.B. ("Father") appeals the termination of his parental rights to C.B. ("Child"). Father argues that the trial court erred by denying his motion for a continuance of the fact-finding hearing because he was incarcerated and attending a compulsory hearing in his criminal case at the time of the final hearing. We conclude that the trial court did not abuse its discretion by denying the motion for a continuance pursuant to Indiana Trial Rule 7(D) and, further, that the denial of the motion for a continuance did not violate Father's due process rights. Accordingly, we affirm.

## Issue

Father raises one issue, which we restate as whether the trial court erred by denying his motion for a continuance of the fact-finding hearing.

## Facts

Child was born to S.K. ("Mother") and Father in May 2017. Child tested positive for unprescribed Oxycodone when he was born. In September 2023, Mother was involved in a serious car accident with her other children in the vehicle. There were concerns that Mother was impaired at the time. Both Mother and Father have substance abuse issues.

DCS filed a petition alleging that Child was a child in need of services ("CHINS") on October 27, 2023. At the time, Mother was hospitalized, and

Child was living with maternal grandmother. Mother had a protection order against Father for domestic violence. Child was later removed from Mother's and Father's care on March 21, 2024, because both Mother and Father were incarcerated, and Child was placed with an aunt and uncle.

[5] A CHINS fact-finding hearing was held on May 23, 2024, and Father did not appear due to his incarceration. Father's counsel informed the trial court that Father was incarcerated in Ohio and unlikely to be released until September 2024. The trial court adjudicated Child a CHINS on May 30, 2024, and entered a dispositional order on July 18, 2024. Father was ordered to, in part: maintain contact with DCS; submit to random drug screenings; participate in a parenting assessment and follow all recommendations; complete a substance abuse assessment and follow all recommendations; obey the law; avoid consumption of illegal or unprescribed substances; and attend all visits with Child. Father, however, was inconsistent in participating in services.

[6] Father failed to appear at a September 2024 review hearing due to his incarceration in Ohio. Father appeared at hearings in November and December 2024 and began participating in services. Father, however, was incarcerated in Kentucky in January 2025 for possession of methamphetamine. Father failed to appear at a permanency hearing in February 2025, and the trial court granted a continuance due to Father's illness. Father, however, did not appear at the rescheduled hearing. Father also did not appear for CHINS hearings in July 2025 or September 2025.

[7] On June 20, 2025, DCS filed a petition for involuntary termination of Mother's and Father's parental rights. An initial hearing was held on June 30, 2025, and Father failed to appear. The trial court appointed counsel for Father (the same counsel who represented Father in the CHINS proceeding), ordered that DCS serve Father by publication, and continued the hearing. Father also failed to appear at the second initial hearing on July 14, 2025. At that time, Father had not been in contact with his counsel, and his counsel did not know Father's whereabouts. Father communicated with his counsel on July 17, 2025, and his counsel informed Father that the fact-finding hearing was scheduled for September 29, 2025. Further, Father was served with notice of the fact-finding hearing by publication and a notice was also sent to his last known address.

[8] The trial court held a fact-finding hearing on September 29, 2025, and Father failed to appear. Father's counsel noted at that time that Father had not communicated with her for "a significant period of time." Tr. Vol. II p. 11. The trial court ordered the parties to engage in mediation and continued the fact-finding hearing to November 10, 2025. Notice of the November 10, 2025 hearing was mailed to Father's last known address. Father also communicated with his counsel later that day. His counsel later provided Father with a Zoom link for the mediation, and Father did not respond to the message. Father did not appear at the mediation, but Mother appeared and consented to Child's adoption. At the mediation, Mother informed the parties that Father was incarcerated in Kentucky.

[9] At the November 10, 2025 hearing, Father again did not appear. Father's counsel informed the trial court that counsel last had contact with Father on September 29, 2025, and October 15, 2025, and that DCS had located Father in Kentucky. Father's counsel contacted the jail "for purposes of [Father] appearing" at the fact-finding hearing and "was informed that [Father] has a hearing over there in Kentucky so he would be unavailable to attend." *Id.* at 29. At the fact-finding hearing, Father's counsel orally requested "that the Court grant a continuance in this matter, to allow [Father] to either appear in person or by Zoom." *Id.*

[10] DCS objected to the motion for continuance and noted that: (1) Father failed to appear for the September 29 hearing; and (2) throughout the proceedings, Father failed to maintain contact with DCS, the trial court, or his counsel. DCS further noted that: (1) Father was incarcerated in Kentucky; (2) Father pleaded guilty on September 8, 2025, to possession of methamphetamine; (3) Father failed to appear for his sentencing hearing and a warrant was issued for Father; (4) the warrant was returned on October 29, 2025; and (5) the Kentucky authorities advised that Father "had another proceeding pending and . . . wouldn't be available" for the termination of parental rights hearing.[1] *Id.* at 35.

---

[1] Father claims that he "was participating in a compulsory sentencing hearing at the same time the fact-finding hearing was scheduled in the termination matter." Appellant's Br. p. 9. The record, however, merely indicates that Father "had another proceeding pending and . . . wouldn't be available." Tr. Vol. II p. 35.

The trial court denied the motion for a continuance, noting that Father rarely participated in the CHINS and termination proceedings; they "probably wouldn't be hearing from him" except that he was incarcerated; and they were "right up to" the 180-day deadline "which cannot be extended, even by agreement of the parties."[2] *Id.* at 36. The trial court then proceeded with the fact-finding hearing.

DCS presented evidence that Father previously had his parental rights terminated to another child. Father last completed a drug screen in April 2025.

---

[2] At the time the petition to terminate Father's rights was filed, Indiana Code Section 31-35-2-6 provided:

(a) Except when a hearing is required after June 30, 1999, under section 4.5 of this chapter, the person filing the petition shall request the court to set the petition for a hearing. Whenever a hearing is requested under this chapter, the court shall:

(1) commence a hearing on the petition not more than ninety (90) days after a petition is filed under this chapter; and

(2) complete a hearing on the petition not more than one hundred eighty (180) days after a petition is filed under this chapter.

(b) If a hearing is not held within the time set forth in subsection (a):

(1) upon filing of a motion with the court by a party; and

(2) absent good cause shown for the failure to hold the hearing within the time set forth in subsection (a);

the court shall dismiss the petition to terminate the parent-child relationship without prejudice.

Effective July 1, 2025, the statute was amended and Subsection (b) now provides:

(b) If a hearing is not held within the time set forth in subsection (a):

(1) upon filing of a motion with the court by a party; and

(2) absent a finding by the court that the extension of the deadline for the hearing is necessitated by:

(A) unanticipated, emergent circumstances;

(B) the circumstances of the case; or

(C) the Indiana Rules of Trial Procedure;

the court shall dismiss the petition to terminate the parent-child relationship without prejudice.

The family case manager testified that the visitation provider canceled services after Father repeatedly cancelled, postponed, or "no-showed" for visits with Child. *Id.* at 47. Father last had contact with DCS in July 2025, when he asked for visitation with Child. The family case manager explained that Father would need to have regular drug screening, participate in services, and remain in contact with DCS. Father then had no further contact with DCS. Father last visited with Child over a year before the fact-finding hearing. The family case manager testified:

> My opinion is that the situation will not be remedied. I've worked with [Father] off and on, in the other case, for quite some time, and it was the same type of behavior. Disappearing for several months at a time. He's been arrested several times. We could not get him to drug screen regularly. We could not get him to stay in contact with us regularly. We could not get him to complete any services from start to finish, throughout either case.

*Id.* at 48.

[13] On November 13, 2025, the trial court entered an order granting DCS's petition to terminate Father's parental rights to Child. The trial court noted that "[F]ather has been in and out of incarceration, not maintained contact with the child, participated in services, or provided any support for the child." Appellant's App. Vol. II p. 115. Father now appeals.

## Discussion and Decision

[14] Father challenges the denial of his motion for a continuance of the fact-finding hearing regarding the termination of his parental rights.[3] We recognize that the Fourteenth Amendment to the United States Constitution protects the traditional rights of parents to establish a home and raise their children. *In re K.T.K.*, 989 N.E.2d 1225, 1230 (Ind. 2013). "[A] parent's interest in the upbringing of [his or her] child is 'perhaps the oldest of the fundamental liberty interests recognized by th[e] [c]ourt[s].'" *Id.* (quoting *Troxel v. Granville*, 530 U.S. 57, 65, 120 S. Ct. 2054 (2000)). Parental rights, however, are not absolute and must be subordinated to the child's best interests when determining the proper disposition of a petition to terminate parental rights. *Id.*; *see also In re Ma.H.*, 134 N.E.3d 41, 45 (Ind. 2019) ("Parents have a fundamental right to raise their children—but this right is not absolute."). "When parents are unwilling to meet their parental responsibilities, their parental rights may be terminated." *Ma.H.*, 134 N.E.3d at 45-46.

[15] "Generally speaking, a trial court's decision to grant or deny a motion to continue is subject to abuse of discretion review." *In re K.W.*, 12 N.E.3d 241, 243-44 (Ind. 2014) (citing *Rowlett v. Vanderburgh Cnty. Office of Fam. & Child.*, 841 N.E.2d 615, 619 (Ind. Ct. App. 2006), *trans. denied*). When a trial court denies a party's motion for a continuance, there is a strong presumption that the trial

---

[3] We note that Father does not challenge the sufficiency of the evidence related to the termination of his parental rights. Father only challenges the denial of the motion for a continuance.

court properly exercised its discretion. *In re N.K.*, 249 N.E.3d 607, 615 (Ind. Ct. App. 2024).

[16] Our Supreme Court has held that "'[a]n abuse of discretion may be found in the denial of a motion for a continuance when the moving party has shown **good cause** for granting the motion,' but 'no abuse of discretion will be found when the moving party has not demonstrated that he or she was prejudiced by the denial.'" *K.W.*, 12 N.E.3d at 244 (quoting *Rowlett*, 841 N.E.2d at 619) (emphasis added). The reference to a showing of "good cause," however, appears to be based on former Indiana Trial Rule 53.5, which Father relies upon and provided in relevant part: "Upon motion, trial may be postponed or continued in the discretion of the court, and shall be allowed upon a showing of **good cause** established by affidavit or other evidence." (emphasis added).

[17] Effective January 1, 2025, former Trial Rule 53.5 was repealed, and motions to continue are now governed by Trial Rule 7(D). *See In re O.M.*, 266 N.E.3d 326, 330 n.5 (Ind. Ct. App. 2025). The fact-finding hearings in this case were held in September and November 2025, and Father's motion to continue is, accordingly, governed by Trial Rule 7(D), which provides:

> (1) A party must file a motion for continuance as soon after the cause for continuance or delay is discovered by the party seeking the same.
>
> (2) Any written motion to continue a matter must be filed pursuant to subdivision (B) and must include:

(a) A statement that the opposing party has no objection;

(b) A statement that the opposing party objects; or

(c) A statement that the opposing party's position is unknown, and the date, time, and method by which the moving party filing the motion attempted to obtain agreement and the result, or why such outreach was not possible.

(3) If a party did not comply with subdivision (D)(2), a court may grant a motion for continuance only if the moving party certifies to the court, in writing, the efforts made to give notice and the reasons supporting the moving party's claim that actual notice should not be required.

(4) A party's motion must include:

(a) the approximate amount of time needed to elapse before the matter can be heard, and,

(b) a good faith estimate of the time needed for the rescheduled hearing or trial.

Ind. Trial Rule 7(D). This new rule contains no reference to a showing of "good cause," but it appears to leave continuances to the discretion of the trial court, so long as the procedural requirements of the rule are met. *See* T.R. 7(D)(3) (stating that the trial court "may" grant a motion for continuance if the movant satisfies certain conditions). Father's last minute oral motion for a continuance, which was requested on the second day of the fact-finding hearing, met none of these requirements. Father's motion was not written, did

not identify DCS's position on the continuance, and did not indicate when Father would be available. Accordingly, the trial court did not abuse its discretion by denying the motion to continue under Trial Rule 7(D).

[18] Father also argues that the denial of his motion for a continuance violated his due process right to be present at the hearing. Father did not raise a due process argument at the trial court level and makes no fundamental error argument on appeal. Thus, the issue is waived. *See In re N.G.*, 51 N.E.3d 1167, 1173 (Ind. 2016) ("[A] party on appeal may waive a constitutional claim, including a claimed violation of due process rights, by raising it for the first time on appeal.").

[19] Waiver notwithstanding, Father has failed to demonstrate a due process violation. "When the State seeks to terminate the parent-child relationship, it must do so in a manner that meets the requirements of due process." *In re C.G.*, 954 N.E.2d 910, 917 (Ind. 2011). Parents, however, do not have a constitutional right to be physically present at a final termination hearing. *Id.* at 922. Indiana Code Section 31-32-2-3(b) provides that, in proceedings to terminate the parent-child relationship, "[a] parent, guardian, or custodian is entitled: (1) to cross-examine witnesses; (2) to obtain witnesses or tangible evidence by compulsory process; and (3) to introduce evidence on behalf of the parent, guardian, or custodian."

[20] The United States Supreme Court has stated that "'the fundamental requirement of due process is the opportunity to be heard at a meaningful time

and in a meaningful manner.'" *C.G.*, 954 N.E.2d at 917 (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)). The process due in a termination of parental rights proceeding turns on the balancing of three factors: (1) the private interests affected by the proceeding; (2) the risk of error created by the State's chosen procedure; and (3) the countervailing governmental interest supporting use of the challenged procedure. *Id.* Both the State and the parent have substantial interests affected by the proceeding, so we focus on the risk of error created by the trial court's actions. *Id.* at 917-18.

[21] Here, Father had a meaningful opportunity to be heard through his counsel, who was the same counsel that represented Father during the CHINS proceedings. Father's counsel participated in the fact-finding hearing and cross-examined DCS's witnesses. Further, the risk of error caused by holding the fact-finding hearing in Father's absence is minimal.[4] "In considering the efficacy of a continuance, the trial court could reflect on Father's patterns with respect to attendance, communication, and participation when he was not incarcerated." *In re J.E.*, 45 N.E.3d 1243, 1247 (Ind. Ct. App. 2015), *trans. denied*.

---

[4] Father relies upon an eleven-factor test set forth by our Supreme Court in *C.G.*, 954 N.E.2d at 922-23. Our Supreme Court later clarified that this test, however, "applies to consideration of a motion to *transport* an incarcerated parent to a TPR hearing . . . not to a motion to continue the TPR hearing until the parent is no longer incarcerated." *K.W.*, 12 N.E.3d at 244. Application of this test is not compelled here as Father requested a continuance of the hearing, not a motion to transport. *See, e.g., id.*

[22] Father was served notice of the fact-finding hearing by publication, by notice at his last known address, and by text message from his counsel, but Father failed to attend the first day of the fact-finding hearing. The Kentucky warrant for Father was returned on October 29, 2025. Father, thus, was apparently not incarcerated at the time of the September 29, 2025 fact-finding hearing but still failed to appear. If Father was unable to attend the November 10, 2025 hearing due to another hearing in his Kentucky criminal matter, Father could have brought that to the trial court's attention before the hearing and indicated when he was available to attend.[5] Instead, Father failed to keep his counsel and DCS apprised of his situation, and his counsel made an oral motion to continue on the day of the hearing. Father's lack of communication indicates a lack of interest in these proceedings, just as his lack of communication in the CHINS proceedings indicated the same lack of interest.

[23] Father rarely participated in the CHINS or termination of parental rights proceedings; failed to comply with the CHINS dispositional order; was in and out of jail during the CHINS and termination of parental rights proceedings; had not seen Child in more than a year; was incarcerated on methamphetamine possession charges at the time of the fact-finding hearing; failed to keep DCS or his counsel apprised of his location throughout both proceedings; and had sporadic contact with his counsel throughout the proceedings. After balancing

---

[5] The record does not indicate Father's sentence or potential sentence, but that information likely would have been available if Father had maintained contact with his counsel and DCS.

the substantial interest of Father with that of the State and in light of the minimal risk of error created by the trial court's denial of the last-minute motion for a continuance, we conclude that the trial court's denial of Father's motion for a continuance did not rise to the level of a due process violation.

## Conclusion

The trial court did not abuse its discretion by denying Father's last-minute motion for a continuance, and the denial did not violate Father's due process rights. Accordingly, we affirm the trial court's order terminating Father's parental rights to Child.

Affirmed.

Bailey, J., and Foley, J., concur.

ATTORNEY FOR APPELLANT

R. Patrick Magrath
West Sixth Law, LLP
Madison, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

Samuel J. Dayton
Supervising Deputy Attorney General
Indianapolis, Indiana