## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 07 2018, 10:21 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Julianne L. Fox
Evansville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General

David E. Corey
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In re the Termination of the Parent-Child Relationship of J.C.D. (Minor Child) and J.D. (Father) | December 7, 2018 |
| J.D. (Father), | Court of Appeals Case No. 18A-JT-1411 |
| *Appellant-Respondent,* | Appeal from the Vanderburgh Superior Court |
| v. | The Honorable Brett J. Niemeier, Judge |
| Indiana Department of Child Services, | The Honorable Renee Allen Ferguson, Magistrate |
| *Appellee-Petitioner* | Trial Court Cause No. 82D04-1711-JT-2206 |

**Vaidik, Chief Judge.**

# Case Summary

[1] J.D. ("Father") appeals the termination of his parental rights to his son, J.C.D. ("Child"). We affirm.

# Facts and Procedural History

[2] The facts that follow are taken primarily from the trial court's findings of fact, none of which Father challenges on appeal.[1] In May 2003, Father went to a tavern with a handgun and opened fire, killing two people and injuring two others. The day before that shooting, Father shot another person, leaving him a quadriplegic. Later that month, Father was charged with two counts of murder and three counts of attempted murder. In December 2003, while Father was incarcerated awaiting trial, Child was born to S.G. ("Mother") and Father. In March 2005 Father pled guilty and was sentenced to 255 years; he was resentenced to 170 years in March 2014. *See* 82C01-0305-MR-00529. Father's earliest release date is in 2088.[2]

[3] In May 2015, when Child was eleven years old, the Indiana Department of Child Services (DCS) received a report of abuse and/or neglect alleging that

---

[1] Because Father does not challenge the trial court's findings of fact, we accept them as true. *See Maldem v. Arko*, 592 N.E.2d 686, 687 (Ind. 1992) ("Because Maldem does not challenge the findings of the trial court, they must be accepted as true.").

[2] Father stated that his earliest possible release date is 2027, but even if he were released in 2027, Child would be over twenty-one years old. *See* Tr. p. 20.

Child's guardian (his maternal grandmother) used illegal substances while he was in her care and that Child lacked stable housing. Maternal grandmother admitted using cocaine. Child as well as his sibling ("Sibling") (who shares Child's Mother but has a different father) were removed from Mother and maternal grandmother and placed in foster care together. DCS later filed a petition alleging that Child was a child in need of services (CHINS). Child was adjudicated a CHINS in June, and a dispositional decree was entered as to Mother and Father in August.

[4] In January 2017, DCS filed a petition to terminate Mother's and Father's parental rights to Child.[3] In February, Mother's parental rights to Child were terminated. The plan was for Child and Sibling to be adopted together.

[5] Father's sister ("Aunt") was interested in adopting Child. In June 2017, the trial court ordered placement with Aunt, and DCS "began visitation services to prepare [Aunt] to adopt [Child]." *Id.* at 8. On July 11, Father signed a consent for Aunt to adopt Child. However, Aunt did not follow through with the adoption process and, eventually, withdrew her petition to adopt Child.

[6] In November 2017, DCS re-filed the petition to terminate Father's parental rights. A fact-finding hearing was held in March 2018. Father appeared by telephone. Family Case Manager (FCM) Rachel Johann testified that Father is not able to provide "suitable housing," "income for [Child's] necessities,"

---

[3] DCS also filed a petition to terminate Mother's parental rights to Sibling.

"stability," or a "crime free environment." Tr. p. 24. FCM Johann testified that Child has no bond with Father and that Child "does not have a good relationship with his Father." *Id.* at 26. FCM Johann also testified that Child has experienced trauma—Child has "been in and out of homes," "been homeless," "witnessed domestic violence," and "witnessed drug use." *Id.* at 29. FCM Johann recommended that Child be placed in the Special Needs Adoption Program (SNAP) with his sibling and adopted, and that Father's parental rights "be terminated." *Id.* at 26. Court Appointed Special Advocate (CASA) Deborah Gamache testified that she recommended adoption but "would like to see the adoption by [Aunt] if possible." *Id.* at 46. CASA Gamache testified, however, that she had "lost contact with [Aunt]" so she had not "talked to [Aunt] recently about re-doing the adoption." *Id.* at 48. CASA Gamache ultimately testified that parental "rights need to be terminated" and Child "needs to find permanency." *Id.* at 51. Father testified that he wants Aunt to adopt Child so that he can have communication with Child because Child "needs to understand the struggles that his Father's gone through." *Id.* at 15. Father also testified that the reason Aunt withdrew her adoption petition was because she would not receive financial assistance and the "cost of livin[g] is high[.]" *Id.* at 18.

[7]     At the end of the hearing, Father's attorney called Aunt to testify about her attempt to adopt Child. Although Aunt was present at the beginning of the hearing, she could not be found. Father's attorney requested a continuance due to Aunt's absence: "What I'm gonna have to do, Judge, I guess, is to ask for a

continuance so I can try to find out what is the reason [Aunt] has disappeared."

*Id.* at 55-56. The trial court denied Father's request for a continuance:

> This witness that is unavailable would merely be testifying as to a potential placement or outcome after parental rights are terminated, not testifying as to whether parental rights should be terminated or not. So therefore, the Court denies the motion for continuance.

*Id.* at 58. The trial court issued an order terminating Father's parental rights in May 2018. The order provides, in relevant part:

> 14. [C]ontinuation of the parent-child relationship poses a threat to [Child's] well-being. [Child] has experienced a significant amount of trauma and not terminating Father's rights threatens not only to cause [Child] further trauma, but also to delay [Child] in finding a stable, permanent home.
>
> *****
>
> 2. It is in the best interests of [Child] to be adopted due to the inability of [Father] to provide appropriate care and supervision for [Child].
>
> 3. DCS and [CASA] believe that termination of Father's parental rights and adoption are in [Child's] best interest.
>
> *****
>
> 5. DCS considered alternatives before deciding that adoption through SNAP was the plan best-suited for [Child], but those plans were determined to be inappropriate. No other relatives have been identified. DCS plans to place [Child] and sibling in

SNAP together, so that they will be adopted into the same home and can remain together.

6. DCS has a satisfactory plan for [Child].

Appellant's App. Vol. II pp. 7-9.

Father now appeals.

# Discussion and Decision

Father makes two arguments on appeal. First, Father argues that the trial court should have granted his motion to continue. Second, Father contends that the trial court erred when it terminated his parental rights.

# I. Motion to Continue

First, Father argues that the trial court abused its discretion and violated his due-process rights when it denied his motion to continue. Generally, the decision to grant or deny a motion to continue is within the sound discretion of the trial court, and we will reverse only for an abuse of discretion. *In re J.E.*, 45 N.E.3d 1243, 1246 (Ind. Ct. App. 2015), *trans. denied.* An abuse of discretion occurs when the trial court's conclusion is clearly against the logic and effect of the facts and circumstances before the court or the reasonable and probable deductions to be drawn therefrom. *Id.* When a motion to continue has been denied, an abuse of discretion will be found if the moving party has demonstrated good cause for granting the motion, but we will reverse the trial

court's decision only if the moving party can show that he was prejudiced by the denial. *Id.*

[11] Here, the record shows that Father wanted to call Aunt to testify about her attempt to adopt Child, not to testify about termination of Father's parental rights. Accordingly, the trial court denied the motion to continue. On appeal, Father does not say how he was prejudiced by the denial of the motion to continue or set forth what evidence Aunt would have presented had she been available to testify. Instead, Father attempts a reverse argument—that the trial court abused its discretion because neither the State or Child would have been prejudiced by a continuance. As such, we conclude that the trial court did not abuse its discretion.

[12] To the extent that Father argues that his due-process rights were violated because he did not have the "opportunity to fully litigate the issues at hand," Appellant's Br. p. 10, we find no merit to this argument. When the State seeks to terminate the parent-child relationship, it must do so in a manner that meets the requirements of due process. *Hite v. Vanderburgh Cty. Office of Family & Children*, 845 N.E.2d 175, 181 (Ind. Ct. App. 2006). Due process in parental-rights cases involves the balancing of three factors: (1) the private interests affected by the proceeding; (2) the risk of error created by the State's chosen procedure; and (3) the countervailing government interest supporting use of the challenged procedure. *Id.* There is no doubt that Father's private interest in his parental relationship with Child is substantial. *See id.* Likewise, the government's countervailing interest in protecting the welfare of children is also

substantial. *See id.* Here, the record shows that Father was able to testify, cross-examine DCS's witnesses, and call his own witnesses. The fact that Aunt (who was not expected to testify regarding termination anyway) left before she was called to testify, does not convince us that there was a substantial risk of error created by the trial court's denial of the motion to continue. Accordingly, we cannot say that Father's due-process rights were violated.

## II. Termination

[13] When reviewing the termination of parental rights, we do not reweigh the evidence or judge witness credibility. *In re K.T.K.*, 989 N.E.2d 1225, 1229 (Ind. 2013). Rather, we consider only the evidence and reasonable inferences that are most favorable to the judgment of the trial court. *Id.* When a trial court has entered findings of fact and conclusions, we will not set aside the trial court's findings or judgment unless clearly erroneous. *Id.* To determine whether a judgment terminating parental rights is clearly erroneous, we review whether the evidence supports the trial court's findings and whether the findings support the judgment. *In re V.A.*, 51 N.E.3d 1140, 1143 (Ind. 2016).

[14] A petition to terminate parental rights must allege, among other things:

> (B) that one (1) of the following is true:
>
>> (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

(ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

(iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C) that termination is in the best interests of the child; and

(D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2). DCS must prove the alleged circumstances by clear and convincing evidence. *In re K.T.K.*, 989 N.E.2d at 1231. If the court finds that the allegations in a petition are true, the court shall terminate the parent-child relationship. Ind. Code § 31-35-2-8(a).

[15] First, Father challenges the trial court's conclusion that there is a reasonable probability that continuation of the parent-child relationship poses a threat to Child's well-being. Indiana Code section 31-35-2-4(b)(2)(B) is written in the disjunctive and requires the trial court to find only one of the two requirements of subsection (B) has been established by clear and convincing evidence. *See In re A.G.*, 45 N.E.3d 471, 478 (Ind. Ct. App. 2015), *trans. denied.*

[16] Here, the trial court determined that DCS established, by clear and convincing evidence, that there is a reasonable probability that the conditions resulting in Child's removal will not be remedied, and that continuation of the parent-child relationship poses a threat to Child's well-being. *See* I.C. § 31-35-2-4(b)(2)(B)(i),

(ii). However, Father only challenges one—that the continuation of his relationship to Child poses a threat to Child's well-being. As such, Father has waived any argument that DCS did not satisfy its burden as to subsection (B). *See In re B.R.*, 875 N.E.2d 369, 373 (Ind. Ct. App. 2007), *trans. denied.* Nonetheless, given our preference for resolving a case on its merits, we will review the trial court's conclusion regarding subsection (B)(ii) of the termination statute.

[17] A trial court need not wait until a child is irreversibly influenced by a deficient lifestyle such that his physical, mental, and social growth is permanently impaired before terminating the parent-child relationship. *In re E.S.*, 762 N.E.2d 1287, 1290 (Ind. Ct. App. 2002). When the evidence shows that the emotional and physical development of a child in need of services is threatened, termination of the parent-child relationship is appropriate. *Id.* Here, Father "has been incarcerated for the entirety of [Child's] life." Appellant's App. Vol. II p. 6. Father has never met Child and has never been a caretaker to Child. Furthermore, the trial court found that Father has an extensive history of criminal activity, including two counts of murder, and cannot provide Child with suitable housing, income for necessities, a crime-free environment, or stability since Father will be in prison until the year 2088. *See id.* at 5-6. Accordingly, the trial court did not err when it concluded that there is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of Child.

[18]     Next, Father challenges the trial court's conclusion that termination was in Child's best interests because Aunt should adopt Child. To determine what is in the child's best interests, the trial court must look to the totality of the evidence. *In re A.D.S.*, 987 N.E.2d 1150, 1158 (Ind. Ct. App. 2013), *trans. denied.* In doing so, the trial court must subordinate the interests of the parent to those of the child. *Id.* We have previously held that recommendations by both the DCS manager and CASA to terminate parental rights, in addition to evidence that the conditions resulting in removal will not be remedied, is clear and convincing evidence that termination is in the best interests of the child. *Id.* at 1158-59.

[19]     Here, FCM Johann and CASA Gamache testified that termination of Father's parental rights and adoption are in Child's best interests. *See* Appellant's App. Vol. II. p. 8; *see also* Tr. pp. 26, 46. Furthermore, the trial court found that Child has suffered trauma, and has expressed that he wants permanency and a home. *See* Appellant's App. Vol. II p. 7. Therefore, the trial court did not err when it determined that termination is in Child's best interests. *See also In re K.T.K.*, 989 N.E.2d at 1230 (finding that "children have an interest in terminating parental rights that prevent adoption and inhibit establishing secure, stable, long-term, continuous relationships.").

[20]     The gist of Father's argument—that Aunt should adopt Child—is more appropriately framed as a challenge to the trial court's conclusion that there is a satisfactory plan for Child's care and treatment. In order for the trial court to terminate a parent-child relationship, it must find that there is a satisfactory

plan for the care and treatment of the child.  Ind. Code § 31-35-2-4(b)(2)(D).  That plan need not be detailed, so long as it offers a general sense of the direction the child will go after the parent-child relationship is terminated.  *Lang v. Starke Cty. Office of Family & Children*, 861 N.E.2d 366, 374 (Ind. Ct. App. 2007), *trans. denied.*  Adoption is generally a satisfactory plan, even when a potential adoptive family has not been identified.  *See id.* at 375.  Part of the reason for this is that it is within the authority of the adoption court, not the termination court, to decide whether an adoptive placement is appropriate.  *In re A.S.*, 17 N.E.3d 994, 1007 (Ind. Ct. App. 2014), *trans. denied.*

[21]    Here, DCS's plan was adoption.  FCM Johann and CASA Gamache agreed with this plan.  Father contends that because CASA Gamache stated that she would prefer adoption by Aunt be attempted again, adoption is not a satisfactory plan.  However, not only did Aunt withdraw her petition to adopt Child (which further traumatized Child), but she abruptly left the termination hearing and could not be found.  *See* Appellant's App. Vol. II p. 8.  Therefore, the trial court did not err in concluding that adoption was a satisfactory plan for Child.

[22]    Affirmed.

Riley, J., and Kirsch, J., concur.