## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 17 2020, 9:46 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Nathan D. Hoggatt
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Monika Prekopa Talbot
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In Re: The Termination of the Parent-Child Relationship of A.C. Jr. and J.C. (Minor Children);

A.C. (Father),

*Appellant-Respondent,*

v.

The Indiana Department of Child Services,

*Appellee-Petitioner.*

March 17, 2020

Court of Appeals Case No.
19A-JT-1576

Appeal from the Wells Circuit Court

The Honorable Kenton W. Kiracofe, Judge

Trial Court Cause No.
90C01-1809-JT-43
90C01-1809-JT-44

**Pyle, Judge.**

[1]     A.C. ("Father") appeals the termination of the parent-child relationship with his sons A.C., Jr., ("A.C., Jr."), and J.C. ("J.C."), collectively ("the children").[1] He contends that: (1) the trial court abused its discretion when it denied his motion to continue the termination hearing; and (2) there is insufficient evidence to support the terminations. Finding no abuse of the trial court's discretion and sufficient evidence to support the terminations, we affirm the trial court's judgment.

[2]     We affirm.

## Issues

1.     Whether the trial court abused its discretion when it denied Father's motion to continue the termination hearing.

2.     Whether there is sufficient evidence to support the termination of the parent-child relationships.

## Facts

[3]     Father is the parent of A.C., Jr., who was born in April 2014, and J.C., who was born in April 2015. In January 2016, the children were removed from Mother and placed in foster care because of Mother's methamphetamine use. Father was incarcerated at the time. Mother complied with the terms of what appears to have been an informal disposition, and the children were returned to

---

[1] The children's mother's ("Mother") parental rights were also terminated. However, she is not a party to this appeal.

her in July 2016. After Mother admitted that Father had treated her violently in the past and that she was scared of him, a DCS case manager worked with Mother to put in place a safety plan to protect herself when Father was released from incarceration. The CHINS case was closed in December 2016.

[4] In August 2017, an intoxicated Father, who was on parole for a felony burglary conviction, forced his way into Mother's home and attacked her when she refused to allow him to see the children. The State charged Father with strangulation, domestic battery committed in the presence of a child less than sixteen years old, residential entry, resisting law enforcement, battery, and public intoxication.

[5] Later that month, DCS again removed the children from Mother because of her methamphetamine use. Father was incarcerated at the time, and the children were placed with their previous foster family. Father was released from incarceration in November 2017, and the children were adjudicated to be children in need of services ("CHINS") in December 2017.

[6] In January 2018, the trial court entered a dispositional order, which ordered Father to: (1) complete a substance abuse assessment and successfully complete all recommendations; (2) complete a psychological assessment and successfully complete all recommendations; (3) complete a domestic violence assessment and successfully complete all recommendations; (4) abstain from the use of alcohol; (5) follow all terms of parole; (6) maintain a legal and stable source of

income; (7) maintain suitable, safe, and stable housing; and (8) submit to random drug screens.

[7] One month later, in February 2018, police officers were dispatched to investigate a report of vandalism and an argument between two men. When the officers arrived at the scene, they discovered Father outside of Mother's home. At the time, there was an order prohibiting Father from contacting Mother. Father was belligerent and had a knife and a bag of needles in his possession. His blood alcohol level was .17. The State charged Father with Class B misdemeanor public intoxication and Class A misdemeanor invasion of privacy, and he was re-incarcerated.

[8] Seven months later, in September 2018, DCS filed a petition to terminate Father's parental rights. In February 2019, the trial court granted Father's appointed counsel ("appointed counsel") a two-month continuance of the termination hearing because of "some emergency situations." (Tr. Vol. 2 at 29). The day before the rescheduled hearing, Father's appointed counsel filed another motion to continue the termination hearing. She specifically explained in the motion that she could not be present at the hearing "for unavoidable health reasons[.]" (App. Vol. 2 at 35).

[9] At the hearing the following day, attorney Scott Harter ("Attorney Harter") explained that appointed counsel was very ill. Attorney Harter explained that he had been assisting appointed counsel on Father's case for the previous two

months. When asked if he was prepared for the hearing, Attorney Harter responded as follows:

> You bet I'm prepared; I don't go into hearings not being prepared. [Father] deserves adequate assistance, effective assistan[ce] of counsel, and I'm here to provide that. Would I have preferred that [appointed counsel] handle this case? Yes, certainly[.] But I just want, for the record, to be understood that I am not the primary attorney on this case. . . . I will do my very best job. I do feel I'm prepared.

(Tr. Vol. 2 at 115, 116).

[10] Counsel for DCS objected to the continuance because "the[] children need[ed] permanency, and a continuance was already given . . . several months ago . . . and . . . we would like to move forward today." (Tr. Vol. 2 at 117). Guardian Ad Litem Beth Webber ("GAL Webber") agreed with DCS and pointed out that this was the second time that the children had been involved with DCS and that they had spent more time in placement than in the home of either parent. The trial court denied Father's motion to continue the termination hearing.

[11] Testimony at the April 2019 hearing revealed that Father was incarcerated for a parole violation at the time of the hearing. He had not seen the children in over a year. He had sent them several letters after the termination petition had been filed. However, A.C., Jr.'s therapist had recommended against giving the letters to the then three and four-year-old boys.

[12] The evidence further revealed that during the three months that Father had been released from incarceration from November 2017 through February 2018,

he had completed the court-ordered substance abuse assessment with a Bowen Center therapist. During the assessment, Father minimized his alcohol use and criminal history. Specifically, Father told the therapist that he had not used alcohol for three and one-half years and that he only had prior convictions for burglary and aiding and abetting. However, Father had just been charged with public intoxication. In addition, Father's criminal history included convictions for: (1) Class A misdemeanor striking a law enforcement animal in 2008; (2) Class A misdemeanor battery resulting in bodily injury in 2008; (3) Class A misdemeanor trespass in 2009; (4) Class A misdemeanor invasion of privacy in 2009; (5) Class B felony burglary in 2010; and (6) Class A misdemeanor battery resulting in bodily injury in 2013. Father further admitted violating the terms and conditions of his probation in 2013, 2014, and 2015. Although Father completed the assessment, he did not successfully complete the therapist's recommendation for individual therapy to address his substance abuse issues. In addition, Father failed to obtain a psychological evaluation or a domestic violence assessment.

[13] DCS Family Case Manager Laurie Hoffacker ("FCM Hoffacker") testified that the children had been involved with DCS for more than one-half of their lives and that it was important "that we get to the point where we can provide the permanency for these two . . . so that they have a stable environment to live in with parents who are gonna meet their basic needs consistently . . . ensure their safety and be present in their lives." (Tr. Vol. 3 at 103). When asked whether

Father had remedied the conditions that had resulted in the initial removal of his children, FCM Hoffacker responded as follows:

> [A]t the time of the detention, [Father] was incarcerated . . . for a criminal offense[.] While he was . . . out of incarceration . . . services were not completed[.] He was not able to provide . . . a stable environment for his children at that time. [H]e has not received treatment for those . . . issues that led to our involvement. [S]ince the case has been open, he was arrested on new charges [and] violated parole.

(Tr. Vol. 3 at 104). In addition, FCM Hoffacker testified that she had met with Father two weeks before the termination hearing to sign releases of information and that Father had not asked about the children. According to the family case manager, termination of the parent-child relationship was in the children's best interests.

[14] GAL Webber testified Father had a pattern of conduct and behavior that had not changed during the course of the proceedings. She also testified that termination was in the children's best interests.

[15] In June 2019, the trial court issued a detailed twenty-two-page order terminating Father's parental rights. Father now appeals the terminations.

# Decision

[16] Father argues that: (1) the trial court abused its discretion when it denied his motion to continue the termination hearing; and (2) there is insufficient

evidence to support the terminations. We address each of his contentions in turn.

### 1. Denial of Motion to Continue the Termination Hearing

[17] Father first argues that the trial court abused its discretion in denying his motion to continue the termination hearing. Generally, the decision to grant or deny a motion to continue is within the sound discretion of the trial court, and we will reverse only for an abuse of discretion. *In re J.E.*, 45 N.E.3d 1243, 1246 (Ind. Ct. App. 2015), *trans. denied*. An abuse of discretion occurs when the trial court's conclusion is clearly against the logic and effect of the facts and circumstances before the court or the reasonable and probable deductions to be drawn therefrom. *Id.* When a motion to continue has been denied, an abuse of discretion will be found if the moving party has demonstrated that there was good cause for granting the motion and that he was prejudiced by the denial. *Id.*

[18] Here, Father argues that the trial court had good cause to grant his motion "to give him the opportunity to be released from jail and re-engage in services." (Father's Br. 8). However, at the hearing, Father asked for the continuance because appointed counsel was ill. A party may not object on one ground at trial and seek reversal using a different ground on appeal. *Showalter v. Town of Thorntown*, 902 N.E.2d 338, 342 (Ind. Ct. App. 2009) (explaining that the trial court "cannot be found to have erred as to an issue or argument that it never

had an opportunity to consider"), *trans. denied*. Father has waived appellate review of this issue.

[19] Waiver notwithstanding, we find no error. Our review of the record reveals that Attorney Harter told the trial court that he was prepared to provide Father with the effective assistance of counsel and that he would do his very best job. In addition, DCS pointed out that a continuance had already been granted two months before and that the children needed permanency. GAL Weber further pointed out that the children had already spent more time in placement than in the home of either parent. The trial court did not abuse its discretion in denying Father's motion to continue the termination hearing.

## 2. Sufficiency of the Evidence

[20] Father next argues that there is insufficient evidence to support the termination of his parental rights. The traditional right of parents to establish a home and raise their children is protected by the Fourteenth Amendment to the United States Constitution. *In re J.W., Jr.*, 27 N.E.3d 1185, 1187-88 (Ind. Ct. App. 2015), *trans. denied*. However, a trial court must subordinate the interests of the parents to those of the child when evaluating the circumstances surrounding a termination. *Id.* at 1188. Termination of the parent-child relationship is proper where a child's emotional and physical development is threatened. *Id.* Although the right to raise one's own child should not be terminated solely because there is a better home available for the child, parental rights may be

terminated when a parent is unable or unwilling to meet his or her parental responsibilities. *Id.*

[21] Before an involuntary termination of parental rights may occur, DCS is required to allege and prove, among other things:

> (B) that one (1) of the following is true:
>
>> (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
>>
>> (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
>>
>> (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;
>
> (C) that termination is in the best interests of the child; and
>
> (D) that there is a satisfactory plan for the care and treatment of the child.

IND. CODE § 31-35-2-4(b)(2). DCS must prove the alleged circumstances by clear and convincing evidence. *K.T.K. v. Ind. Dep't of Child Servs.,* 989 N.E.2d 1225, 1230 (Ind. 2013).

[22] When reviewing a termination of parental rights, this Court will not reweigh the evidence or judge the credibility of the witnesses. *In re R.S.*, 56 N.E.3d 625, 628 (Ind. 2016). We consider only the evidence and any reasonable inferences to be drawn therefrom that support the judgment and give due regard to the

trial court's opportunity to judge the credibility of the witnesses firsthand. *K.T.K.*, 989 N.E.2d at 1229.

[23] Here, Father argues that there is insufficient evidence to support the termination of his parental rights. Specifically, he first contends that the evidence is insufficient to show that there is a reasonable probability that: (1) the conditions that resulted in the children's removal or the reasons for their placement outside the parent's home will not be remedied; and (2) a continuation of the parent-child relationships poses a threat to the children's well-being.

[24] At the outset, we note that INDIANA CODE § 31-35-2-4(b)(2)(B) is written in the disjunctive. Therefore, DCS is required to establish by clear and convincing evidence only one of the three requirements of subsection (B). *In re A.K.,* 924 N.E.2d 212, 220 (Ind. Ct. App. 2010). We therefore discuss only whether there is a reasonable probability that the conditions that resulted in the children's removal or the reasons for their placement outside the home will not be remedied.

[25] In determining whether the conditions that resulted in a child's removal or placement outside the home will not be remedied, we engage in a two-step analysis. *In re E.M.,* 4 N.E.3d 636, 643 (Ind. 2014). We first identify the conditions that led to removal or placement outside the home and then determine whether there is a reasonable probability that those conditions will not be remedied. *Id.* The second step requires trial courts to judge a parent's

fitness at the time of the termination proceeding, taking into consideration evidence of changed conditions and balancing any recent improvements against habitual patterns of conduct to determine whether there is a substantial probability of future neglect or deprivation. *Id.* Habitual conduct may include parents' prior criminal history, drug and alcohol abuse, history of neglect, failure to provide support, and a lack of adequate housing and employment. *A.D.S. v. Ind. Dep't of Child Servs.*, 987 N.E.2d 1150, 1157 (Ind. Ct. App. 2013), *trans. denied*. The trial court may also consider services offered to the parent by DCS and the parent's response to those services as evidence of whether conditions will be remedied. *Id.* Requiring trial courts to give due regard to changed conditions does not preclude them from finding that a parent's past behavior is the best predictor of his future behavior. *E.M.*, 4 N.E.3d at 643.

[26] Here, our review of the evidence reveals that Father was incarcerated at the time of the children's removal from Mother. He was released from incarceration shortly before the children were adjudicated to be CHINS. Pursuant to the trial court's dispositional order, Father completed a substance abuse assessment where he minimized his alcohol use and criminal history. He did not successfully complete the assessor's recommendations. He also failed to complete both psychological and domestic violence assessments. Two months later, Father, who has a ten-year criminal history that includes probation revocations, was arrested on new charges and incarcerated for a parole violation. At the time of the hearing, he was incarcerated and had not seen the children for over a year. This evidence supports the trial court's conclusion that

there was a reasonable probability that the conditions that resulted in the children's removal would not be remedied. We find no error.

[27] Father also argues that there is insufficient evidence that the termination was in the children's best interests. In determining whether termination of parental rights is in the best interests of a child, the trial court is required to look at the totality of the evidence. *In re D.D.*, 804 N.E.2d 258, 267 (Ind. Ct. App. 2004), *trans. denied*. In so doing, the court must subordinate the interests of the parents to those of the child involved. *Id.* Termination of the parent-child relationship is proper where the child's emotional and physical development is threatened. *In re R.S.*, 774 N.E.2d 927, 930 (Ind. Ct. App. 2002), *trans. denied*. "'A parent's historical inability to provide adequate housing, stability and supervision coupled with a current inability to provide the same will support a finding that continuation of the parent-child relationship is contrary to the child's best interest.'" *In re B.D.J.*, 728 N.E.2d 195, 203 (Ind. Ct. App. 2000) (quoting *Matter of Adoption of D.V.H.*, 604 N.E.2d 634, 638 (Ind. Ct. App. 1992), *trans. denied, superseded by rule on other grounds*). Further, the testimony of the service providers may support a finding that termination is in the child's best interests. *McBride v. Monroe Cty. Office of Family and Children*, 798 N.E.2d 185, 203 (Ind. Ct. App. 2003).

[28]     Here, both FCM Hoffacker and GAL Webber testified that termination was in the children's best interests.[2]  The testimony of these service providers, as well as the other evidence previously discussed, supports the trial court's conclusion that termination was in the children's best interests.

[29]     We reverse a termination of parental rights "only upon a showing of 'clear error'—that which leaves us with a definite and firm conviction that a mistake has been made." *Egly v. Blackford Cty. Dep't of Pub. Welfare*, 592 N.E.2d 1232, 1235 (Ind. 1992).  We find no such error here and therefore affirm the trial court.

[30]     Affirmed.

May, J., and Crone, J., concur.

---

[2] Father has waived appellate review of his argument that GAL Webber's testimony was inadmissible hearsay for two reasons.  First, he failed to object to her testimony on this ground at the termination hearing.  *See Showalter*, 902 N.E.2d at 342.  In addition, Father has failed to support his argument with cogent argument and relevant authority. *See Kentucky Nat'l. Ins. Co. v. Empire Fire and Marine Ins. Co.*, 919 N.E.2d 565, 598 (Ind. Ct. App. 2010) (holding that argument was waived for failure to cite authority or provide cogent argument).