## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Apr 08 2020, 10:15 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Joann M. Price Franklin
Merrillville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Katherine A. Cornelius
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In Re: The Matter of the Termination of the Parent-Child Relationship of A.B. (Minor Child); | April 8,2020 |
| | Court of Appeals Case No. 19A-JT-2368 |
| L.B. (Mother), | |
| *Appellant-Defendant,* | Appeal from the Lake Superior Court |
| v. | The Honorable Thomas P. Stefaniak, Jr., Judge |
| The Indiana Department of Child Services, | Trial Court Cause No. 45D06-1904-JT-125 |
| *Appellee-Plaintiff.* | |

**Pyle, Judge.**

# Statement of the Case

[1] L.B. ("Mother") appeals the termination of the parent-child relationship with her daughter, A.B. ("A.B."), claiming that: (1) the trial court abused its discretion when it denied her motion for a continuance; and (2) there is insufficient evidence to support the termination. Finding no abuse of the trial court's discretion and sufficient evidence to support the termination, we affirm the trial court's judgment.[1]

[2] We affirm.

# Issues

1. Whether the trial court abused its discretion when it denied Mother's motion for a continuance.

2. Whether there is sufficient evidence to support the termination of the parent-child relationship.

# Facts

[3] The evidence and reasonable inferences that support the judgment reveal that Mother first became involved with DCS in 2013 when another daughter, Ang.B. ("Ang.B."), tested positive for cocaine and opiates at birth. Mother admitted that she had used hydrocodone and cocaine while she was pregnant. Ang.B. and her two-year-old sister were removed from the home and placed

---

[1] A.B.'s alleged father is deceased.

with an aunt. The two girls were adjudicated to be children in need of services ("CHINS"), and Mother was court ordered to participate in services.

[4] Four years later, in September 2017, Mother gave birth to A.B., who also tested positive for cocaine and opiates. Doctors prescribed morphine to treat A.B.'s withdrawal symptoms and contacted DCS. The DCS case worker who had been assigned to the case involving Mother's two oldest daughters met with Mother at the hospital. Mother admitted that she had used cocaine and unprescribed pain pills while pregnant. Mother also admitted that she was homeless. DCS placed A.B. in foster care when she was discharged from the hospital. She was not placed with her two older sisters.

[5] A week later, DCS filed a petition alleging that A.B. was a CHINS. Mother admitted the allegations, and the trial court adjudicated A.B. to be a CHINS. In November 2017, the trial court also ordered Mother to: (1) participate in a substance abuse treatment program; (2) participate in home-based services; (3) participate in individual therapy; (4) maintain suitable, safe, and stable housing; (5) abstain from the use of drugs; (6) submit to random urine drug screens; and (7) attend supervised visitation with A.B.

[6] The CHINS case involving Mother's two oldest daughters was closed in the spring of 2018 when their aunt was granted a guardianship. In September 2018, Mother gave birth to daughter Am.B., ("Am.B."), who tested positive for cocaine and amphetamines and who was placed on morphine for withdrawal symptoms. At the time of Am.B.'s birth, Mother admitted to a DCS

caseworker that she: (1) was a heroin addict; (2) had not participated in a substance abuse treatment program as previously ordered; and (3) had not consistently visited A.B.

[7]    In December 2018, DCS filed a petition to terminate the parental relationship between Mother and A.B. DCS filed a motion to dismiss the petition when it learned that Mother was participating in an inpatient substance abuse treatment program. Mother successfully completed the program but relapsed two to three months later.

[8]    In April 2019, DCS filed a second petition to terminate Mother's parental relationship with A.B. At the beginning of the August 2019 hearing, Mother asked the trial court to continue the hearing for sixty days. Mother specifically explained that she had completed nineteen days of a twenty-eight-day inpatient substance abuse program. She asked the trial court for time to complete the program and maintain her sobriety upon release from the program.

[9]    DCS objected to the continuance and pointed out that Mother had had the opportunity to address her substance abuse issues for six years. DCS further pointed out that it had previously dismissed a petition to terminate Mother's parental rights to allow her to complete an inpatient drug treatment program and maintain her sobriety upon release from the program. However, Mother had relapsed two to three months later. The trial court denied Mother's motion to continue the hearing.

[10] Testimony at the termination hearing revealed that Mother had never fully complied with the trial court's order following A.B.'s adjudication as a CHINS. First, Mother continued to use drugs. Mother's urine tested positive for cocaine throughout the proceedings and for fentanyl in May 2019 after DCS had filed the second petition to terminate Mother's parental relationship with A.B. However, Mother's urine did not test positive for suboxone, which she had been prescribed to treat her heroin addiction. Second, Mother never consistently visited A.B. When Mother did attend visitation, the facilitator had to redirect her and remind her to change A.B.'s diaper and to feed her. Mother's visits with A.B. never progressed to unsupervised. Third, Mother never obtained stable housing. At the time of the hearing, Mother had been living with her boyfriend in a hotel room for nine months. A DCS caseworker testified that this was not stable housing for A.B. because Mother and her boyfriend had a history of domestic violence incidents and the boyfriend had at times forced Mother to leave the hotel room. According to the case worker, DCS had told Mother that it would not reunify her with A.B. while she was living in the hotel with her boyfriend.

[11] Further, although Mother had consistently been attending individual therapy for a few months leading up to the termination hearing, the therapist testified that Mother had a history of severe trauma and used drugs to self-medicate. According to the therapist, even if Mother cooperated, it would take her more than two years to complete the therapeutic process. Mother's therapist also

testified that Mother was "on an ongoing risk of relapse" because she had not internalized "motivation to change her whole self." (Tr. Vol. 2 at 42).

[12] When asked whether the conditions that had resulted in A.B.'s removal had been remedied, DCS case manager Kimberly Nilson ("Case Manager Nilson") responded that they had not. According to Case Manager Nilson, DCS had offered Mother all of the services that it possibly could, and Mother had not been able to maintain her sobriety or find stable housing. The case manager specifically testified that there was no "end in sight at th[at] point to remedying those issues." (Tr. Vol. 2 at 77). Case Manager Nilson further testified that A.B. had been living with her foster parents for almost two years and that she had bonded with them and the other children in the home. The plan for A.B. was foster parent adoption. According to the case manager, termination of Mother's parental rights and foster parent adoption was in A.B.'s best interests.

[13] In September 2019, the trial court issued an order terminating Mother's parental rights. Mother now appeals.

# Decision

[14] Mother argues that the trial court abused its discretion in denying her motion for a continuance and that there is insufficient evidence to support the termination. We address each of her contentions in turn.

**1. Denial of Mother's Motion for a Continuance**

[15]    Mother first argues that the trial court abused its discretion in denying her motion for a continuance.  The decision to grant or deny a continuance rests within the sound discretion of the trial court.  *In re K.W.*, 12 N.E.3d 241, 243-44 (Ind. Ct. App. 2014).  An abuse of discretion occurs when the party requesting the continuance has shown good cause for granting the motion and the trial court denies it.  *Id.* at 244.  No abuse of discretion will be found when the moving party is not prejudiced by the denial of its motion.  *Id.*

[16]    When considering the appropriateness of a continuance within termination proceedings, the trial court may consider a parent's patterns with respect to attendance, communication, and participation in services during the CHINS case.  *In re J.E.*, 45 N.E.3d 1243, 1247 (Ind. Ct. App. 2015), *trans. denied*.  The party moving for a continuance must also show that he or she is "free from fault."  *In re B.H.*, 44 N.E.3d 745, 748 (Ind. Ct. App. 2015), *trans. denied*.

[17]    Here, Mother requested a continuance on the grounds that she was participating in an inpatient drug treatment program.  Mother requested time to complete the program and maintain her sobriety.  DCS objected and pointed out that Mother had had the opportunity to address her substance abuse issues for six years.  DCS further pointed out that, in December 2018, it had previously dismissed a petition to terminate Mother's parental rights to allow her to complete an inpatient substance abuse treatment program and maintain her sobriety upon release from the program.  However, Mother had relapsed two to three months later.  Based on these facts and circumstances, Mother has

failed to show good cause for granting the motion, and the trial court did not abuse its discretion in denying it.

## 2. Sufficiency of the Evidence

[18] Mother also argues that there is insufficient evidence to support the termination. The Fourteenth Amendment to the United States Constitution protects the traditional right of parents to establish a home and raise their children. *In re K.T.K.,* 989 N.E.2d 1225, 1230 (Ind. 2013). However, the law provides for termination of that right when parents are unwilling or unable to meet their parental responsibilities. *In re Bester*, 839 N.E.2d 143, 147 (Ind. 2005). The purpose of terminating parental rights is not to punish the parents but to protect their children. *In re L.S.,* 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), *trans. denied*.

[19] When reviewing the termination of parental rights, we will not reweigh the evidence or judge the credibility of the witnesses. *K.T.K.*, 989 N.E.2d at 1229. Rather, we consider only the evidence and reasonable inferences that support the judgment. *Id*. Where a trial court has entered findings of fact and conclusions thereon, we will not set aside the trial court's findings or judgment unless clearly erroneous. *Id.* (citing Ind. Trial Rule 52(A)). In determining whether the court's decision to terminate the parent-child relationship is clearly erroneous, we review the trial court's judgment to determine whether the evidence clearly and convincingly supports the findings and the findings clearly and convincingly support the judgment. *Id.* at 1229-30.

[20]  A petition to terminate parental rights must allege:

> (B) that one (1) of the following is true:
>
>> (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
>>
>> (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
>>
>> (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;
>
> (C) that termination is in the best interests of the child; and
>
> (D) that there is a satisfactory plan for the care and treatment of the child.

IND. CODE § 31-35-2-4(B)(2).  DCS must prove the alleged circumstances by clear and convincing evidence.  *K.T.K.*, 989 N.E.2d at 1231.

[21]  Here, Mother argues that there is insufficient evidence to support the termination of her parental rights.  Specifically, she first contends that the evidence is insufficient to show that there is a reasonable probability that the conditions that resulted in A.B.'s removal or the reasons for placement outside the parent's home will not be remedied.

[22]  In determining whether the conditions that resulted in a child's removal or placement outside the home will not be remedied, we engage in a two-step analysis.  *In re E.M.,* 4 N.E.3d 636, 643 (Ind. 2014).  We first identify the

conditions that led to removal or placement outside the home and then determine whether there is a reasonable probability that those conditions will not be remedied. *Id.* The second step requires trial courts to judge a parent's fitness at the time of the termination proceeding, taking into consideration evidence of changed conditions and balancing any recent improvements against habitual patterns of conduct to determine whether there is a substantial probability of future neglect or deprivation. *Id.* Habitual conduct may include parents' prior criminal history, drug and alcohol abuse, history of neglect, failure to provide support, and a lack of adequate housing and employment. *A.D.S. v. Ind. Dep't of Child Servs.*, 987 N.E.2d 1150, 1157 (Ind. Ct. App. 2013), *trans. denied*. The trial court may also consider services offered to the parent by DCS and the parent's response to those services as evidence of whether conditions will be remedied. *Id.* Requiring trial courts to give due regard to changed conditions does not preclude them from finding that a parent's past behavior is the best predictor of his future behavior. *E.M.*, 4 N.E.3d at 643.

[23] Here, our review of the evidence reveals that A.B. was removed from Mother at birth in September 2017 because of Mother's drug use and homelessness. A.B. was Mother's second child that tested positive for cocaine and opiates at birth. Nearly two years later, Mother was still using drugs, including cocaine and fentanyl, and had not been able to maintain stable housing. Further, during the course of the proceedings, Mother had given birth to a third daughter that had tested positive for cocaine and amphetamines. This evidence supports the trial court's conclusion that there was a reasonable probability that the conditions

that resulted in A.B.'s placement outside the home would not be remedied. To the extent that Mother highlights her participation in an inpatient drug treatment program at the time of the termination hearing, the trial court was well within its discretion to "disregard the efforts Mother made only shortly before termination and to weigh more heavily Mother's history of conduct prior to those efforts." *In re K.T.K.*, 989 N.E.2d at 1234.

[24] Mother also argues that there is insufficient evidence that the termination is in A.B.'s best interests. In determining whether termination of parental rights is in the best interests of a child, the trial court is required to look at the totality of the evidence. *In re D.D.*, 804 N.E.2d 258, 267 (Ind. Ct. App. 2004), *trans. denied*. In so doing, the court must subordinate the interests of the parents to those of the child involved. *Id.* Termination of the parent-child relationship is proper where the child's emotional and physical development is threatened. *In re R.S.*, 774 N.E.2d 927, 930 (Ind. Ct. App. 2002), *trans. denied*. "'A parent's historical inability to provide adequate housing, stability and supervision coupled with a current inability to provide the same will support a finding that continuation of the parent-child relationship is contrary to the child's best interest.'" *In re B.D.J.*, 728 N.E.2d 195, 203 (Ind. Ct. App. 2000) (quoting *Matter of Adoption of D.V.H.*, 604 N.E.2d 634, 638 (Ind. Ct. App. 1992), *trans. denied, superseded by rule on other grounds*). Further, the testimony of the service providers may support a finding that termination is in the child's best interests. *McBride v. Monroe Cty. Office of Family and Children*, 798 N.E.2d 185, 203 (Ind. Ct. App. 2003).

[25]     Here, Mother has historically been unable to provide A.B. with adequate housing, stability, and supervision, and was unable to provide the same at the time of the termination hearing. In addition, Case Manager Nilson testified that termination of Mother's parental rights and foster parent adoption was in A.B.'s best interests. The testimony of Case Manager Nilson, as well as the other evidence previously discussed, supports the trial court's conclusion that termination was in A.B.'s best interests.

[26]     Last, Mother argues that DCS does not have a satisfactory plan for A.B.'s care and treatment. This Court has previously explained that the plan for the care and treatment of the child need not be detailed, so long as it offers a general sense of the direction in which the child will be going after the parent-child relationship is terminated. *In re L.B.*, 889 N.E.2d 326, 341 (Ind. Ct. App. 2008). Here, the DCS caseworker testified that the plan for the care and treatment of A.B. is adoption. This is a satisfactory plan. *See In re A.N.J.*, 690 N.E.2d 716, 722 (Ind. Ct. App. 1997).

[27]     We reverse a termination of parental rights "only upon a showing of 'clear error'—that which leaves us with a definite and firm conviction that a mistake has been made." *Egly v. Blackford Cty. Dep't of Pub. Welfare*, 592 N.E.2d 1232, 1235 (Ind. 1992). We find no such error here and therefore affirm the trial court.

[28]    Affirmed.

May, J., and Crone, J., concur.